A00A0429. HOOTERS OF AUGUSTA, INC. v. NICHOLSON et al.
(537 SE2d 468)

ELLINGTON, Judge.

Sam Nicholson filed a class action against Bambi Clark d/b/a Value-Fax of Augusta and Hooters of Augusta, Inc., alleging that Hooters used Clark to send unsolicited advertisements to facsimile machines in violation of the federal Telephone Consumer Protection Act ("TCPA"), 47 USC § 227. The class action complaint sought injunctive relief and statutory damages for each violation. The trial court certified the class. The trial court denied Hooters' motion to dismiss and motion for summary judgment. Following the grant of its application for interlocutory review, Hooters appeals, contending that the plaintiffs have no private right of action under the TCPA; that the TCPA cannot reach purely intrastate communications; that Hooters is not liable for the conduct of an independent contractor; and that the class was improperly certified. For the reasons which follow, we affirm.

1. Hooters contends that Nicholson and the other class members may assert a claim under the TCPA *only if* Georgia law explicitly provides a private right of action for intrastate unsolicited facsimile advertisements and that, because Georgia law does not so provide, the trial court erred in denying Hooters' motion to dismiss.

(a) We first examine whether consumers in general may bring private actions under the TCPA only if applicable state law explicitly

provides such a right for intrastate transmissions. The TCPA prohibits a number of specific telemarketing activities, including in pertinent part "the use of any device to send an unsolicited advertisement to a telephone facsimile machine." *Erienet, Inc. v. Velocity Net*, 156 F3d 513, 514-515 (3rd Cir. 1998); see 47 USC § 227 (b) (1) (C). With regard to enforcement, the TCPA authorizes states to bring civil actions in federal court on behalf of their residents for violations of the act. 47 USC § 227 (f). In addition to state enforcement, the subsection of the TCPA which prohibits unsolicited facsimile advertisements provides for a private right of action, as follows:

> A person or entity may, *if otherwise permitted by the laws or rules of court of a State*, bring in an appropriate court of that State — (A) an action based on a violation of this subsection . . . to enjoin such violation, (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or (C) both such actions.

(Emphasis supplied.) 47 USC § 227 (b) (3).

As the trial court recognized, whether the complaint states a cause of action turns on the interpretation of the clause "if otherwise permitted by the laws or rules of court of a State." In opposing Hooters' motion to dismiss for failure to state a claim, Nicholson argued that the clause means that state courts may automatically hear TCPA actions unless the state "opts out" and enacts a law prohibiting such private actions in its courts. The trial court agreed, adopting the construction set out in an opinion from the Court of Appeals for the Fourth Circuit, *Intl. Science &c. Inst. v. Inacom Communications*, 106 F3d 1146 (4th Cir. 1997). In *Intl. Science*, the Fourth Circuit explained in dicta:

> The clause in 47 U.S.C. § 227 (b) (3) "if otherwise permitted by the laws or rules of court of a State" does not condition the substantive right to be free from unsolicited faxes on state approval. . . . Rather, the clause recognizes that states may refuse to exercise the jurisdiction authorized by the statute. Thus, a state could decide to prevent its courts from hearing private actions to enforce the TCPA's substantive rights. . . . [C]oncerned over the potential impact of private actions on the administration of state courts, *Congress included a provision to allow the states to prohibit private TCPA actions in their courts*. . . . With those interests in mind and recognizing that other enforcement mechanisms are available in the TCPA, we believe Congress acted

rationally in . . . *allowing states to close [their courts]* to the millions of private actions that could be filed if only a small portion of each year's 6.57 billion telemarketing transmissions were illegal under the TCPA.

(Emphasis supplied.) Id. at 1156-1157. The Fourth Circuit concluded the TCPA "recognizes state power to reject Congress' authorization" of private enforcement but does not require explicit enabling legislation. Id. at 1158. The trial court in this case applied the same opt-out analysis and concluded "even though Georgia law does not expressly allow private TCPA actions, it does not expressly prohibit them either," and on this basis denied Hooters' motion to dismiss for failure to state a claim.

The few state court decisions construing the clause are not in agreement.[1] In the absence of clear and controlling authority, we will not construe the TCPA in a manner which leaves Georgia citizens without a remedy. We are persuaded by the analysis in *Intl. Science* quoted above and therefore construe the TCPA as creating a private right of action and conferring jurisdiction upon state courts.[2]

(b) The trial court correctly determined that Georgia law does not expressly prohibit private TCPA actions for the transmission of unsolicited facsimile advertisements. The Georgia Public Utilities Code prohibits the transmission of unsolicited facsimile advertisements; private actions are neither explicitly authorized nor forbidden in the relevant Code section.[3] OCGA § 46-5-25. In accordance with our conclusion in Division 1 (a), the absence of a statute declining to exercise the jurisdiction authorized by the TCPA gives Georgia citizens the right to seek the relief provided by the TCPA.

We believe the dissent reads too much into the explicit inclusion

---

[1] Since the trial court's decision, New York adopted the *Intl. Science* analysis in the context of unsolicited facsimile advertisements. *Kaplan v. Democrat & Chronicle*, 698 NYS2d 799, 800 (App. Div. 1999); *Kaplan v. First City Mtg.*, 701 NYS2d 859, 863 (City Ct. 1999). See also *Charvat v. ATW, Inc.*, 127 Ohio App.3d 288 (712 NE2d 805) (1998); *Szefczek v. Hillsborough Beacon*, 286 N.J. Super. 247 (668 A2d 1099) (1995), cited by the trial court, recognizing a private right of action under another similar subsection of the TCPA, 47 USC § 227 (c), despite the absence of any enabling state legislation. Texas, on the other hand, recently adopted the opt-in analysis urged by Hooters. See *Autoflex Leasing v. Manufacturers Auto Leasing*, 16 SW3d 815, 817 (Tex. App. 2000).

[2] Actions brought under 47 USC § 227 by private citizens may not be brought in federal court. *Intl. Science*, 106 F3d at 1150; *Chair King, Inc. v. Houston Cellular Corp.*, 131 F3d 507, 509 (5th Cir. 1997); *Nicholson v. Hooters of Augusta*, 136 F3d 1287-1288, modified, 140 F3d 898 (11th Cir. 1998); *Erienet*, 156 F3d at 516; *Foxhall Realty Law Offices v. Telecommunications Premium Svcs.*, 156 F3d 432, 438 (2nd Cir. 1998); *Murphey v. Lanier*, 204 F3d 911 (9th Cir. 2000).

[3] Writing as amicus curiae, the Georgia Public Service Commission, the agency charged with civil enforcement of OCGA § 46-5-25, agreed that Georgia law does not forbid private actions for TCPA violations and that the right to bring a TCPA suit in Georgia applies to intrastate facsimiles.

of a private cause of action in a related Code section, OCGA § 46-5-27 (i), which deals with telephone solicitations to residences. Section 46-5-27 was enacted in 1998[4] — after the TCPA had been in place for seven years. We can certainly presume the legislature drafted OCGA § 46-5-27 with awareness of the TCPA.[5] OCGA § 46-5-25, on the other hand, was enacted in 1990[6] — the year before the TCPA — in the first wave of the Georgia General Assembly's attempt to address the public's frustration with telemarketing abuses. Obviously, we cannot presume the legislature drafted OCGA § 46-5-25 with the TCPA's private right of action in mind.

Furthermore, until this year no state or federal court in a published opinion interpreted the clause "if otherwise permitted by the laws . . . of a State" as signifying that the TCPA allows a private right of action to be brought in state court for interstate communications only if the state legislature passes legislation consenting to state court actions based on the TCPA. *Autoflex Leasing v. Manufacturers Auto Leasing*, 16 SW3d 815, 817 (Tex. App. 2000). As noted above, the interpretation of that clause remains the subject of dispute. See *Kaplan v. Democrat & Chronicle*, 698 NYS2d 799, 800 (App. Div. 1999); *Kaplan v. First City Mtg.*, 701 NYS2d 859, 863 (City Ct. 1999). Our rule of statutory construction which requires us to presume that the legislature is aware of existing law does not require us to presume that the legislature's failure to include a private right of action in OCGA § 46-5-25 "was a considered choice" under these circumstances.

Because we conclude that Georgia consumers may pursue private actions under the TCPA, the trial court correctly denied the motion to dismiss. See *Cellular One v. Emanuel County*, 227 Ga. App. 197-198 (489 SE2d 50) (1997).

2. Hooters contends that the TCPA cannot reach purely intrastate communications. See 47 USC § 152 (a) (limiting the Communications Act to interstate and foreign communications). As the trial court found, however, Congress expressed its intent to regulate both interstate and intrastate communications under the TCPA by amending 47 USC § 152 (b) to specifically except the TCPA from the "interstate" limitation of 47 USC § 152 (a).[7] The Commission's ena-

---

[4] Ga. L. 1998, p. 505, § 1.

[5] Indeed, the legislative findings included in OCGA § 46-5-27 restated nearly verbatim many of the legislative findings of the TCPA. Compare OCGA § 46-5-27 (a) (1)-(6) and 47 USC § 227, Congressional Statement of Findings (1)-(3), (5)-(6), (9).

[6] Ga. L. 1990, p. 252, § 1.

[7] As amended, 47 USC § 152 (b) provides:
Except as provided in sections 223 through 227 [the TCPA] . . . nothing in this Act shall be construed to apply or to give the Commission jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or in con-

bling rules further show that the TCPA governs both intrastate and interstate transmissions. See 47 CFR § 64.1200 et seq. The trial court did not err in denying Hooters' motion to dismiss or for summary judgment on this basis.

3. Hooters contends it cannot be held liable under the TCPA for Clark's conduct because she was an independent contractor. First, a jury question remains regarding Clark's status as an independent contractor. Generally, an employer-employee relationship, and the possibility of vicarious liability under the theory of respondeat superior, exists when the employer has the right to control the time and manner of executing the work. *Owens v. BarclaysAmerican/Mtg. Corp.*, 218 Ga. App. 160, 161 (460 SE2d 835) (1995). An independent contractor, on the other hand, has the right to perform the work by his own means, method and manner; the employer has the right merely to require certain results. Id. In this case, the trial court correctly determined that the evidence presented a jury question as to Hooters' right to control the means, method and manner of executing the work, specifically in terms of designing and producing the ad and (more importantly for determining whether the advertisements were unsolicited and therefore in violation of the TCPA) in terms of deciding who would receive the newsletter. The court correctly denied Hooters' motion for summary judgment. See *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

To provide some guidance to the trial court, we note that even if the jury finds that Clark was an independent contractor, Hooters may still be liable for unsolicited facsimile advertisements. Under the TCPA, "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the [TCPA's] rule banning unsolicited facsimile advertisements." Release No. 95-310 of the Federal Communications Commission, CC Docket No. 92-90, 10 FCC Rcd 12391 (1995), Pars. 34-35.[8] Based on this authority, we conclude that an advertiser may not avoid liability under the TCPA solely on the basis that the transmission was executed by an independent contractor.

4. Hooters contends that the class was improperly certified. The certification of a class action is a matter of discretion with the trial judge, and, absent an abuse of that discretion, we will not disturb the trial court's decision. *Taylor Auto Group v. Jessie*, 241 Ga. App. 602,

---

nection with intrastate communication service by wire or radio of any carrier.

[8] Similarly, OCGA § 46-5-25 (b), which makes it unlawful to "employ or direct another person to initiate the transmission of, or contract for the initiation of the transmission of" an unsolicited advertisement by facsimile, clearly contemplates holding the advertiser liable for unsolicited facsimile advertisements, regardless of whether the person who pushes the "send" button is an employee or an independent contractor.

603 (2) (527 SE2d 256) (1999). Under OCGA § 9-11-23, a class action is authorized if the members of the class share a common right, and common questions of law or fact predominate over individual questions of law or fact. *Trend Star Continental, Ltd. v. Branham*, 220 Ga. App. 781, 782 (1) (469 SE2d 750) (1996). In this case, the trial court conducted a hearing and certified the class upon concluding that the class is so numerous as to make it impracticable to bring all members before the court; that the questions of law and fact common to the class members predominate over any individual questions; that the claim of the named plaintiff is typical of the claims of the members of the class; that the named plaintiff and class counsel will adequately represent the interests of the class; and that a class action is superior to other available methods of achieving a fair and efficient adjudication of the controversy. The trial court did not abuse its discretion in certifying the class.

*Judgment affirmed. Ruffin, Eldridge, Barnes and Mikell, JJ., concur. Andrews, P. J., and Blackburn, P. J., dissent.*

ANDREWS, Presiding Judge, dissenting.

Because Georgia does not provide for a private right of action under 47 USC § 227, I respectfully dissent.

The provision in question states that a person or entity may, "if otherwise permitted by the laws or rules of court of a State," bring an action based on a violation of the Telephone Consumer Protection Act. Whether Nicholson's class action suit is proper turns on the interpretation of "if otherwise permitted by the laws or rules of court of a State."

When the language of a statute is plain and susceptible of but one reasonable construction, we have no authority to place a different construction on it but must construe it according to its terms. *State Farm &c. Ins. Co. v. Ainsworth*, 198 Ga. App. 740, 742 (402 SE2d 759) (1991). Here, the plain language of the statute does not accord with the majority's conclusion. The majority opinion ignores the language of the statute and changes "otherwise permitted by" to "unless prohibited by," an unwarranted construction under the "plain language" rule.

Even if there were some ambiguity in the meaning, the rules of statutory interpretation do not support the majority's conclusion. "The cardinal rule of statutory interpretation is to ascertain the legislative intent, keeping in view at all times the old law, the evil, and the remedy." *Kemp v. City of Claxton*, 269 Ga. 173, 175 (496 SE2d 712) (1998). The legislative history shows that the purpose of the Act was to supplement State law in this area. "Over half the States now have statutes restricting various uses of the telephone for marketing, but telemarketers can evade their prohibitions through interstate

operations; therefore, Federal law is needed to control residential telemarketing practices." 47 USC § 227, Congressional Statement of Findings (7). Thus, the purpose of this statute was not to go beyond what the State was already doing to regulate the telemarketers, but rather to allow the States to reach those telemarketers which were evading state jurisdiction by operating interstate.

Unlike the New York opinion cited by the majority, a Texas appeals court determined that Congress intended that the States would pass their own legislation providing for these private rights of action. *Autoflex Leasing v. Manufacturers Auto Leasing*, 16 SW3d 815 (Tex. App. 2000). In reaching this conclusion, the Texas court noted the remarks of Senator Hollings, on this provision of the Act:

> The substitute bill contains a private right-of-action provision that will make it easier for consumers to recover damages from receiving these computerized calls. The provision would allow consumers to bring an action in State court against any entity that violates the bill. The bill does not, because of constitutional constraints, dictate to the States which court in each State shall be the proper venue for such an action, as this is a matter for State legislators to determine. Nevertheless, it is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court. . . . Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages. I thus expect that the States will act reasonably in permitting their citizens to go to court to enforce this bill.

137 Cong. Rec. S16205-06 (daily ed. November 7, 1991) (statement of Sen. Hollings). Thus, we see that Congress intended that the States, if they chose to permit a private right of action, would implement guidelines providing for how and where these claims could be brought.

Moreover, it is interesting to note that when this case was removed to federal court, the district court granted Hooters' motion to dismiss, holding that the plain language and legislative history of the TCPA support the conclusion that a private cause of action may not be brought under the TCPA unless the State has authorized private civil enforcement of its own telecommunications regulations.

*Nicholson v. Hooters of Augusta*, No. 95-00101-Cv-1 (S.D. Ga. 1996).[9]

Finally, even assuming the majority's interpretation of the federal statute is correct, Georgia does *not* permit a private right of action for this claim, but rather has expressly stated that enforcement of this claim is entrusted to the public service commission. OCGA § 46-5-25, Transmission of unsolicited commercial facsimile messages, provides in pertinent part:

> (e) The commission is charged with the responsibility of civil enforcement of this Code section and the commission shall require local exchange companies to file with the commission appropriate tariff revisions to implement this subsection. Any person who violates the provisions of this Code section shall be subject to disconnection of telephone service if the violation does not cease within ten days from the date of notification to such person by the local exchange company; and the tariff revisions filed by local exchange companies shall provide for the giving of such notification by local exchange companies and for such disconnection of service.

In contrast, the General Assembly did provide for a private right of action in OCGA § 46-5-27 which deals with telephone solicitations to residences:

> (i) Any person who has received more than one telephone solicitation within any 12 month period by or on behalf of the same person or entity in violation of subsection (c) or (g) of this Code section may either bring an action to enjoin such violation; bring an action to recover for actual monetary loss from such knowing violation or to receive up to $2,000.00 in damages for each such knowing violation, whichever is greater; or bring both such actions.

Under the rules of statutory construction we must construe all related statutes together, giving meaning to each part of the statute. Also, we must presume that when the legislature enacted OCGA § 46-5-27 and included a private right of action, it was aware of existing law at the time and therefore aware that it did not include a private right of action in OCGA § 46-5-25. See *Hart v. Owens-Illinois, Inc.*, 250 Ga. 397, 400 (297 SE2d 462) (1982). Therefore, we must also presume that the legislature's failure to include a private right of

---

[9] On appeal, the Eleventh Circuit determined that federal courts lack subject matter jurisdiction of private actions under the Act. *Nicholson v. Hooters of Augusta*, 136 F3d 1287 (11th Cir. 1998).

action under OCGA § 46-5-25 was a matter of considered choice. *Transp. Ins. Co. v. El Chico Restaurants*, 271 Ga. 774, 776 (524 SE2d 486) (1999).

Although there could be some ambiguity if this were simply a question of construing a federal statute, that does not arise in this case because the Georgia legislature has already spoken on this issue. Georgia has a statute in place that covers the claim in this lawsuit. Nicholson could not proceed under that statute because Georgia law does not permit a private right of action.

I am authorized to state that Presiding Judge Blackburn joins in this dissent.

DECIDED JULY 14, 2000 —
RECONSIDERATION DENIED JULY 27, 2000 

*Fulcher, Hagler, Reed, Hanks & Harper, Mark C. Wilby, Elizabeth McLeod, Bondurant, Mixson & Elmore, Emmet J. Bondurant, Frank M. Lowrey IV*, for appellant.

*Burnside, Wall, Daniel, Ellison & Revell, Harry D. Revell*, for appellees.

*Thurbert E. Baker, Attorney General, Robert S. Bomar, Deputy Attorney General, Harold D. Melton, Senior Assistant Attorney General, Stacey Ferris-Smith, Assistant Attorney General*, amici curiae.

