State of TEXAS

v.

AMERICAN BLASTFAX, INC.

No. A 00 CA 085 SS.

United States District Court,
W.D. Texas,
Austin Division.

Oct. 5, 2000.

C. Brad Schuelke, Assistant Attorney General, Leela R. Fireside, Attorney General's Office, Capitol Station, Austin, TX, for State of Texas, plaintiffs.

Dean D. Hunt, Bracewell & Patterson, L.L.P., Houston, TX, Andrew M. Taylor, Bracewell & Patterson, L.L.P., Austin, TX, for American Blastfax, Inc., Michael Horne, Greg Horne, defendants.

## ORDER

SPARKS, District Judge.

BE IT REMEMBERED that on the 5th day of October 2000, the Court reviewed the file in the above-captioned cause and specifically the Defendant's Motion to Dismiss [# 9], the plaintiff's response thereto [# 12], the defendant's reply thereto [# 15], the plaintiff's response thereto [# 18] and the plaintiff's supplemental letter brief [# 24]. After considering the motion, response and reply briefs, the applicable law and the case file as a whole, the Court enters the following opinion and order.

### Factual Background

This case is brought by plaintiff the State of Texas against defendant American Blastfax, Inc. ("Blastfax") alleging causes of action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Texas Deceptive Trade Practices Act, TEX. BUS. & COMM. CODE § 17.41 ("DTPA"). In its first amended complaint, the State alleges that since January 1997 Blastfax has been faxing unsolicited advertisements to consumers in Texas and several other states and has failed to include the time these faxes were sent or to identify Blastfax as the sender. According to the State, Blastfax sends these advertisements on behalf of itself and for third

parties. *See* First Amended Complaint [# 20], Ex. A and B. The State alleges Blastfax is a Texas corporation that does business (*i.e.*, sends its faxes) out of Dallas. *See id.* ¶¶ 8–10. The State seeks a permanent injunction prohibiting Blastfax from sending unsolicited advertisements to any fax machine in Texas and damages for each violation of the TCPA and DTPA. *See id.* ¶¶ 16–17.

In its 46–page motion to dismiss, Blastfax seeks to dismiss the State's TCPA claims on the following grounds: (1) the TCPA does not apply to purely intrastate faxes; (2) Blastfax has fully complied with the applicable state statute covering intrastate fax advertisements; (3) Blastfax is strictly a fax broadcaster and fax broadcasters are not covered by the TCPA; (4) the TCPA's mandatory damages provision violates the Due Process Clause; (5) the TCPA's prohibition on unsolicited fax advertisements violates the Free Speech Clause; and (6) the TCPA's distinction between commercial and noncommercial speech violates the Equal Protection Clause. Blastfax also seeks to dismiss the State's DTPA claim on the grounds that Blastfax did not send its fax advertisements to "consumers" and because the advertisements were truthful.

## Motion to Dismiss Standard

In deciding whether to dismiss for failure to state a claim, "the district court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993). The Court should dismiss only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## Analysis

### I. Does the TCPA apply to intrastate faxes?

Blastfax first argues the plain language and legislative history of the TCPA indicate the statute applies only to interstate faxes. Blastfax also contends applying the TCPA to intrastate faxes would violate the Commerce Clause because Congress has no inherent power to regulate intrastate faxes and the TCPA contains no findings linking intrastate faxes to interstate commerce.

The State responds that telephones are inherently instrumentalities of interstate commerce and therefore Congress has authority to regulate intrastate faxes. The State also contends the TCPA's plain language and legislative history show that the statute applies to both interstate and intrastate faxes. The Court agrees with the State.

As an initial matter, Congress has authority to regulate intrastate faxes. This is because telephones and telephone lines—even when used solely for intrastate purposes—are part of an aggregate interstate system and therefore are inherent instrumentalities of interstate commerce. *See United States v. Weathers*, 169 F.3d 336, 341 (6th Cir.1999) ("It is well established that telephones, even when used intrastate, constitute instrumentalities of interstate commerce."), *cert. denied*, 528 U.S. 838, 120 S.Ct. 101, 145 L.Ed.2d 85 (1999). Accordingly, Congress may regulate purely intrastate telephone activity to protect interstate commerce. *See United States v. Gilbert*, 181 F.3d 152, 158 (1st Cir.1999) (discussing the "long standing" line of cases holding Congress may regulate purely intrastate telephone activity under the Commerce Clause); *Pavlak v. Church*, 727 F.2d 1425, 1427 (9th Cir.1984) ("Federal jurisdiction over purely intrastate communications under the Federal Communications Act derives from Congress' plenary power to regulate interstate commerce through regulating the means of such commerce.... Since the telephone is an instrumentality of interstate commerce, Congress has plenary power under the Constitution to regulate its use and abuse.") (citations omitted); *see also Unit-*

*ed States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 1629, 131 L.Ed.2d 626 (1995) ("Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities."). Blastfax's Commerce Clause argument therefore fails.[1]

In addition, the plain language of the TCPA and the Communications Act of 1934 indicate the TCPA applies to both intrastate and interstate faxes. The TCPA broadly provides that "[i]t shall be unlawful for any person within the United States to use any telephone facsimile machine . . . to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C). Nowhere does the TCPA limit its application to interstate faxes. The TCPA also is part of the Communications Act of 1934. As Blastfax points out, the Communications Act generally applies only to "interstate and foreign telephone communication." *See* 47 U.S.C. § 152(a). However, the Communications Act also expressly excepts certain provisions, including the TCPA, from this interstate-only restriction:

> *Except as provided in sections 223 through 227 of this title . . .* nothing in this chapter shall be construed to apply or give the [FCC] jurisdiction with respect to (1) charges, classifications, practices, services, facilities or regulations for or in connection with intrastate communication service by wire or radio of any carrier . . . .

47 U.S.C. § 152(b) (emphasis added). Section 227 is the TCPA. By specifically exempting the TCPA from the Communications Act's general ban on intrastate regulation, Congress necessarily intended the TCPA to cover both interstate and intrastate communications. *See Hooters of Augusta, Inc. v. Nicholson,* 245 Ga.App. 363, — S.E.2d —, 2000 WL 973601, at *3 (2000) ("Congress expressed its intent to regulate both interstate and intrastate communications under the TCPA by amending 47 USC § 152(b) to specifically except the TCPA from the 'interstate' limitation of 47 U.S.C. § 152(a).").[2]

Finally, the only published opinion that appears to have addressed this issue is the Georgia Court of Appeals decision cited above, which held the TCPA applies to both intrastate and interstate faxes. *See Hooters,* 245 Ga.App. 363, — S.E.2d —, 2000 WL 973601. In its motion, Blastfax contends several federal courts (including the Fifth Circuit) have concluded that "the TCPA applies only to interstate faxes." *See* Motion to Dismiss, at 5. This argument is misleading at best. While two unpublished district court orders did find the TCPA applies only to interstate faxes, both orders were vacated on other grounds (that the TCPA does not permit a private action in federal court). *See Chair King, Inc. v. Houston Cellular Corp.,* 131 F.3d 507 (5th Cir.1997); *Nicholson v. Hooters of Augusta, Inc.,* 136 F.3d 1287 (11th Cir. 1998). Neither Circuit Court decision addressed the intrastate issue; both simply vacated and remanded to state court.[3] Similarly, the other decision cited by Blastfax, the Fourth Circuit opinion in *International Science & Tech. Inst., Inc. v. Inacom Communications, Inc.,* 106 F.3d

---

**1.** Indeed, to hold otherwise would undermine well-established federal law in other areas. *See, e.g., Alley v. Miramon,* 614 F.2d 1372, 1379 (5th Cir.1980) ("This court has consistently held that the intrastate use of the telephone may confer jurisdiction over a private action under Section 10(b) and Rule 10b–5 [of the federal securities laws].")

**2.** Blastfax also argues the legislative history of the TCPA indicates the statute was intended to cover only interstate faxes. However, the excerpts cited by Blastfax simply show the TCPA was meant to supplement state law.

None of the excerpts preclude the TCPA from applying concurrently to both interstate and intrastate faxes. In fact, as the State points out, the sponsor of the House version of the TCPA stated on the floor that the statute "covers both intrastate and interstate unsolicited calls." *See* Plaintiff's Response [# 12], at 11 (quoting 137 Cong. Rec. E793 (March 6, 1991) (statement of Rep. Edward Markey)).

**3.** The result of the Eleventh Circuit remand was the Georgia Court of Appeals decision in *Hooters,* 245 Ga.App. 363, — S.E.2d —, 2000 WL 973601.

1146 (4th Cir.1997), nowhere addresses whether the TCPA applies to intrastate faxes; it holds only that private actions under the TCPA must be brought in state court.

In sum, the Court finds the TCPA applies both to intrastate and interstate fax advertisements. Blastfax's motion to dismiss on this ground is denied.

## II. Blastfax's alleged compliance with state law

■■ Blastfax also argues it is entitled to dismissal of the State's TCPA claims because Blastfax has complied with TEX. BUS. & COMM. CODE § 35.47, the state law regarding intrastate fax advertisements. This argument has nothing to do with the State's allegations in this lawsuit. Simply because a party complies with one law does not preclude it from violating another. The State is suing Blastfax for violating the TCPA, not the Texas statute governing intrastate faxes. Blastfax also argues that, because the Texas statute is allegedly more restrictive than the TCPA, it somehow trumps the TCPA. *See* Defendant's Motion, at 18. This argument turns the Supremacy Clause of the federal constitution on its head. While the TCPA does provide that more restrictive state laws are not preempted by the TCPA, *see* 47 U.S.C. § 227(e), it does not follow that, should a state pass more restrictive laws regarding junk faxes, the TCPA is then preempted in that state. The TCPA contains no "reverse preemption" clause for its ban on unsolicited fax advertisements. This ground for dismissal is wholly without merit.

## III. Fax broadcaster liability under the TCPA

■ Next, Blastfax argues it "cannot be held liable under the TCPA because it merely broadcasts the advertisement for its customers." *See* Defendant's Motion, at 19. As its sole support of this argument, Blastfax cites a 1995 FCC opinion stating that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements, and that fax broadcasters are not liable for compliance with this rule." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 1995 WL 464817, 10 F.C.C.R. 12,391 (F.C.C.1995).

While the FCC has authority to enforce the TCPA and "prescribe regulations implementing the requirements" of the TCPA, *see* 47 U.S.C. §§ 227(b)(2) and (f)(7), the last time the Court checked, Congress did not give the FCC complete power to determine who is liable under the statute. Until that time, the Court will follow the language provided by Congress, which states that "[i]t shall be unlawful for *any person* within the United States to use any telephone facsimile machine ... to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C. § 227(b)(1)(C) (emphasis added). The TCPA places no further restriction on who is liable under this section.[4] According to the State, Blastfax's business centers around using a fax machine to send unsolicited advertisements—the precise conduct outlawed by the TCPA. Blastfax apparently is more than a common carrier or service provider; according to the complaint, Blastfax maintains and uses a database of recipient fax numbers, actively solicits third party advertisers and presumably reviews the content of the fax advertisements it sends.[5] Under these allegations, Blastfax is far more

---

4. Similarly, the FCC's implementing regulations provide "[n]o *person* may ... [u]se a telephone facsimile machine" to send unsolicited advertisements. 47 C.F.R. § 64.1200(a)(3) (emphasis added). The regulations nowhere exempt from liability businesses that solicit fax advertisers, provide fax

advertising databases and then send third party faxes.

5. The State also alleges Blastfax sends its own advertisements to potential fax advertisers. Blastfax clearly is not exempt from potential

than a mere conduit for third party faxes. It would circumvent the purpose of the TCPA to exempt Blastfax from potential liability on the theory that it plays no role in sending the advertisements at issue. The Court therefore finds that, based on the State's allegations (which the Court must accept as true at this stage of the litigation), Blastfax is not exempt from TCPA liability on the grounds that it is a mere "broadcaster" of third party advertisements.[6]

## IV. Due Process challenge to TCPA

■■■ The TCPA provides that a state may bring an action "on behalf of its residents ... for actual monetary loss or receive $500 in damages for each violation, or both such actions." 47 U.S.C. § 227(f)(1). Blastfax contends this damages provision violates constitutional due process because the minimum damages of $500 per violation is "grossly disproportionate" to any actual harm suffered by recipients.

A statutory penalty violates due process "only where the penalty prescribed is so severe and oppressive as to be wholly disproportioned to the offense and obviously unreasonable." *St. Louis, Iron Mt. & S. Ry. Co. v. Williams*, 251 U.S. 63, 40 S.Ct. 71, 73, 64 L.Ed. 139 (1919). The only federal court that appears to have addressed whether the TCPA's $500 per-violation penalty violates this standard (in

a case Blastfax completely ignores in its motion) upheld the TCPA's damages provision. "[W]e find that § 227(b)(3)(B), which provides for a minimum penalty of $500 for each violation of the TCPA, does not violate the Due Process clause of the Fifth Amendment." *Kenro, Inc. v. Fax Daily, Inc.*, 962 F.Supp. 1162, 1167 (S.D.Ind. 1997).[7] The Court agrees with this conclusion.

What Blastfax appears to overlook is that the TCPA damages provision was not designed solely to compensate each private injury caused by unsolicited fax advertisements, but also to address and deter the overall public harm caused by such conduct. As the court stated in *Kenro*, the TCPA was meant to "take into account the difficult to quantify business interruption costs imposed upon recipients of unsolicited fax advertisements, effectively deter the unscrupulous practice of shifting these costs to unwitting recipients of 'junk faxes', and 'provide adequate incentive for an individual plaintiff to bring suit on his own behalf.'" *Id.* at 1166 (citation omitted). The Supreme Court has stated that statutory damages designed to address such "public wrongs" need not be "confined or proportioned to [actual] loss or damages; for, as it is imposed as a punishment for the violation of a public law, the Legislature may adjust its amount to the public wrong rather than the private injury, just as if it were going to the state."[8]

---

liability under the TCPA for sending its own advertisements.

6. The Court notes that the 1995 FCC opinion cited by Blastfax on this issue is not a model of clarity. The opinion purports to address whether liability under the FCC's rules "lies with the entity or entities on whose behalf such messages are sent or with service providers ('fax broadcasters')." 10 F.C.C.R. 12,-391. The opinion provides no further definition of "fax broadcaster," except to note that "fax broadcaster" is a "term of art" in the industry. *See id.* at n. 88. As noted, the Court finds Blastfax, at least as alleged in the complaint, is not a mere service provider. In addition, the original FCC opinion, which the 1995 opinion seeks to "clarify," states that "carriers who simply provide transmission facilities that are used to transmit others' unso-

licited facsimile advertisements may not be held liable for any violations of [47 C.F.R.] § 64.1200(a)(3)." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 1992 WL 690928, 7 F.C.C.R. 8752 (F.C.C.1992). Under the allegations here, Blastfax does more than "simply provide transmission facilities" for the faxes at issue.

7. Section 227(b)(3)(B), the damages provision at issue in *Kenro*, applies to private causes of action; the authorized penalty for private actions is the same for actions filed by a State.

8. Unlike *Williams* (which involved a private plaintiff), any damages awarded in this lawsuit would in fact be "going to the state." Therefore the argument for upholding the TCPA's $500 minimum damages provision as

*Williams,* 40 S.Ct. at 73. The Supreme Court went on to hold that the statute at issue, a fixed penalty for passenger overcharges, did not violate due process because "[w]hen [the statute] is considered with due regard for the interests of the public, the numberless opportunities for committing the offense, and the need for securing uniform adherence to established passenger rates, we think it properly cannot be said to be so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable." *Id.*

■ The same is true here. Congress identified two legitimate public harms addressed by the TCPA's ban on junk faxes: (1) unsolicited fax advertisements can substantially interfere with a business or residence because fax machines generally can handle only one message at a time, at the exclusion of other messages; and (2) junk faxes shift nearly all of the advertiser's printing costs to the recipient of the advertisement. *See Kenro,* 962 F.Supp. at 1167 (citing H.R.Rep. No. 317, 102nd Cong., 1st Sess. 10, 25 (1991)). The Court finds the TCPA's $500 minimum damages provision, when measured against the overall harms of unsolicited fax advertising and the public interest in deterring such conduct, is not "so severe and oppressive as to be wholly disproportioned to the offense or obviously unreasonable." Accordingly, Blastfax's federal due process argument fails.[9]

## V.  Free Speech challenge to TCPA

■ Blastfax also contends the TCPA's ban on unsolicited fax advertisements is an impermissible regulation of speech. The TCPA provision at issue regulates commercial speech. *See* 47 U.S.C. § 227(a)(4)

(defining "unsolicited advertisement" as "material advertising the commercial availability or quality" of goods and services); *see also* 47 C.F.R. § 64.1200(f)(5) (same). Because commercial speech occupies a "subordinate position in the scale of First Amendment values," a statute regulating commercial speech passes constitutional muster as long as it directly advances a substantial governmental interest in a manner that forms a "reasonable fit" with the interest. *See Board of Trusteesof State University v. Fox,* 492 U.S. 469, 109 S.Ct. 3028, 3034, 106 L.Ed.2d 388 (1989). Blastfax contends the TCPA ban on junk faxes does not meet this standard. Once again, Blastfax fails to address the fact that all federal courts to address the issue have upheld the TCPA against the same First Amendment challenge Blastfax makes here.

The first case to address this issue was *Destination Ventures, Ltd. v. F.C.C.,* 844 F.Supp. 632 (D.Or.1994). In that decision, the court found Congress' interest in preventing cost shifting " 'from the advertiser to the unwitting customer' " and in preventing fax machines from being tied up by unwanted messages "is a substantial interest which is identified in the TCPA's legislative history." *See id.* at 637 (quoting TCPA House Report). The Court has already determined these interests are sufficiently legitimate to justify the TCPA's $500 per-violation damages provision. In addition, as the district court in *Destination Ventures* stated, "there were repeated, uncontradicted references made before Congress describing how facsimile advertising shifts economic burdens from the advertiser to the consumer.... Con-

a means to address a "public wrong" is even stronger here.

9.  Blastfax also argues the TCPA should be invalidated for violating the Texas Constitution. Again, Blastfax fails to consider basic Supremacy Clause law. It is axiomatic to our federal system of government that a federal law is not invalid *solely because it violates* one or more state constitutions. *See McCulloch v. Maryland,* 4 Wheat. 316, 17 U.S. 316,

406, 4 L.Ed. 579 (1819) ("The government of the United States, then, though limited in its powers, is supreme; and its laws, when made in pursuance of the constitution, form the supreme law of the land, 'anything in the constitution or laws of any state to the contrary notwithstanding.' "). Accordingly, Blastfax's references to the Texas Constitution as a means for overturning the TCPA will not be considered.

gress legitimately relied upon the testimony from authorities, as well as the contemporaneous state laws and media reports." *Id.* Blastfax's argument that Congress' hearings were not based on sufficient statistical evidence is unpersuasive. The Court therefore finds Congress' interests in passing the TCPA—preventing "unwitting customers" from bearing the brunt of advertising costs and preventing unwanted fax machine interference—are substantial and real.

Blastfax argues that, even if a substantial interest exists, the TCPA does not "directly" advance this interest because "Congress had no evidence that the fax ban would significantly remedy either of the two purported problems of cost-shifting and tied-up fax machines." *See* Motion to Dismiss, at 31. The Court disagrees. It has already been established that the government's interests in preventing the harms caused by unsolicited fax advertising are real and substantial; it necessarily follows that banning such advertising will directly advance these interests. *See Destination Ventures,* 844 F.Supp. at 637 ("Because Congress has addressed a substantial interest in protecting consumers from the economic harms inflicted through unsolicited advertisement faxes ... the subsequent banning of those unsolicited faxes directly advances that interest.").

■ Finally, Blastfax contends the TCPA's ban on unwanted fax advertisements is not properly tailored to these interests because less restrictive alternatives exist. This argument was squarely rejected by the district court in *Destination Ventures,* by the Ninth Circuit in

affirming the district court, and by the only other federal court to address this issue. *See Destination Ventures,* 844 F.Supp. at 637; *Destination Ventures, Ltd. v. F.C.C.,* 46 F.3d 54, 56 (9th Cir.1995) (affirming district court holding that TCPA did not violate First Amendment); *Kenro,* 962 F.Supp. at 1168–69 (holding the mere existence of "imaginable alternatives" to the TCPA does not show the statute is improperly tailored). The district courts in *Kenro* and *Destination Ventures* considered and rejected the same alternatives put forth here by Blastfax—namely, allowing recipients of unsolicited fax advertisements to place themselves on a "do not fax" list as well as placing time, length and/or frequency limits on unsolicited fax advertising. The Court agrees with every other federal court to address this issue—these possible alternatives do not show the TCPA's ban on unsolicited fax advertisements is an unreasonable "fit" for the interests directly advanced by the ban. Blastfax's free speech argument is denied.[10]

## VI. Equal Protection challenge to TCPA

■ In its final challenge to the TCPA, Blastfax claims the statute's ban on unsolicited fax advertisements violates the Equal Protection Clause because it discriminates between commercial advertisements and noncommercial solicitations (such as requests to attend a political rally). Blastfax argues strict scrutiny should be applied in evaluating this challenge because a fundamental right—freedom of speech—is involved.

---

10. Blastfax also argues the TCPA violates the First Amendment because it lacks a scienter requirement for the $500 minimum damages provision. Generally, only statutes imposing *criminal* liability for dissemination of unprotected speech must contain a scienter element. *See New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 3358, 73 L.Ed.2d 1113 (1982); *Smith v. California,* 361 U.S. 147, 80 S.Ct. 215, 217–19, 4 L.Ed.2d 205 (1959). The TCPA imposes no criminal liability. The only case Blastfax cites in support of its contention that non-criminal statutes regulating commer-

cial speech must have a scienter requirement is an Eighth Circuit case, *Video Software Dealers Ass'n v. Webster,* 968 F.2d 684 (8th Cir. 1992). In that case, however, the court characterized the statute at issue (which prohibited the sale or rental of violent videos to minors) as "quasi-criminal in nature." *Id.* at 690. The TCPA is not quasi-criminal, and the Court declines to extend First Amendment jurisprudence by requiring all non-criminal commercial speech regulations to include a scienter requirement.

The Court has rejected Blastfax's First Amendment challenge to the TCPA's ban on unsolicited fax advertisements; strict scrutiny thus is not applicable to Blastfax's equal protection claim on the basis that a First Amendment right is involved. *See Dunagin v. City of Oxford,* 718 F.2d 738, 752 (5th Cir.1983) ("In this case we have held the Mississippi law entirely legal under the First Amendment, and parties cannot insist on strict scrutiny merely by asserting a First Amendment right that the court ultimately finds not to be violated."), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). No other fundamental right or suspect class is implicated by Blastfax's equal protection challenge. The Court has already determined for First Amendment purposes that a reasonable fit exists between the TCPA's identified interests and the means used to protect these interests. This same analysis is sufficient to satisfy equal protection rationality review. *See Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico,* 478 U.S. 328, 106 S.Ct. 2968, 2978 n. 9, 92 L.Ed.2d 266 (1986) ("If there is a sufficient 'fit' between the legislature's means and ends to satisfy the concerns of the First Amendment, the same 'fit' is surely adequate under the applicable 'rational basis' equal protection analysis."). In addition, because Congress has substantial and valid interests in protecting "unwitting customers" from unsolicited fax advertisements, the TCPA's distinction between commercial and noncommercial advertising is quite rational. *See Destination Ventures,* 844 F.Supp. at 639 ("[T]here is clearly a rational basis for the distinctions drawn by the challenged portion of the TCPA. The TCPA was drafted in part to protect consumers from burdens caused by the transmitting of unsolicited fax advertising; accordingly, there is a rational basis for the TCPA's ban."). Blastfax's equal protection argument therefore fails.

## VII. DTPA claim

■ Blastfax also moves to dismiss the State's DTPA claim on the grounds that Blastfax did not send its faxes to "consumers" as that term is used in the DTPA. *See* Motion to Dismiss, at 44. However, as the State correctly argues, the DTPA only requires that *private* lawsuits be brought by "consumers"; there is no such requirement for DTPA lawsuits brought by the State. *See* TEX. BUS. & COMM. CODE § 17.47 (authorizing state attorney general to bring suit under the DTPA). In fact, in the primary case cited by Blastfax on this issue, the court expressly recognized the argument made here by the State:

> A 'person' may have engaged in a deceptive act by presenting any misleading information concerning any item of value. See sections 17.46(a), 17.45(6). Any person engaging in such deceptive practices may be subjected to a suit by the Consumer Protection Division of the Attorney General's Office, under section 17.47. But, one who engages in deceptive acts may not be subjected to a private suit for damages under the Act unless the aggrieved party is a consumer.

*Riverside Nat. Bank v. Lewis,* 603 S.W.2d 169, 173 (Tex.1980). Because this lawsuit is brought by the State, Blastfax's motion to dismiss on this ground is denied.

Blastfax also seeks to dismiss the State's DTPA claim on the grounds that the fax advertisements sent by Blastfax were truthful. While the DTPA does generally prohibit only "false, misleading or deceptive acts or practices;" *see* TEX. BUS. & COMM. CODE § 17.46, whether or not Blastfax's advertisements fall under this category is a disputed fact question that, at the motion to dismiss stage, must be resolved in favor of the State.

In accordance with the foregoing, the Court enters the following orders:

IT IS ORDERED that the Defendant's Motion to Dismiss [# 9] is DENIED; and

IT IS FURTHER ORDERED that the Government's Motion to Intervene [# 21] is DISMISSED AS MOOT.