**Justin T. HOLCOMBE, Plaintiff,**

v.

**DIRECTV, LLC, Alorica, Inc., and Empereon Marketing, LLC, Defendants.**

**CIVIL ACTION NO. 4:15-CV-00154-LMM**

United States District Court, N.D. Georgia, Atlanta Division.

Signed October 19, 2016

James Marvin Feagle, Clifton Dorsen, Skaar and Feagle, Tucker, GA, Kris Kelly Skaar, Skaar & Feagle, LLP, Woodstock, GA, for Plaintiff.

Claire Carothers Oates, David Lewis Balser, Timothy Lee, King & Spalding, LLP, Atlanta, GA, Michael D. Slodov, Sessions, Fishman, Nathan & Isreal, LLC, Chargin Falls, OH, Wendi Erin Fassbender, Sessions, Fishman, Nathan & Isreal, LLC, Mableton, GA, Kellie Mitchell Bubeck, William E. Raney, Copilevitz & Canter, Kansas City, MO, Louis G. Fiorilla, Gregory F. Harley, Burr & Forman, LLP, Atlanta, GA, for Defendants.

## ORDER

Leigh Martin May, United States District Judge

This case comes before the Court on Defendant Alorica, Inc.'s Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted [24]. After a review of the record and due consideration, the Court enters the following Order:

### I. Factual Background [1]

Plaintiff Justin T. Holcombe was a subscriber of satellite television programming

1. Unless otherwise indicated, the following facts are taken from Plaintiff's First Amended

with Defendant DirecTV, LLC ("DirecTV") from April 2010 to March 2014. In February or March 2014, Plaintiff cancelled his account with DirecTV. By April 17, 2014, Plaintiff had completed all contractual obligations with DirecTV.

After Plaintiff was no longer a customer of DirecTV, he became the target of a telemarketing campaign by DirecTV, by and through its agents: Defendants Alorica, Inc. ("Alorica") and Empereon Marketing, LLC ("Empereon"). DirecTV contracts with and authorizes Alorica and Empereon to make calls on its behalf for the purposes of selling satellite television subscriptions. Plaintiff informed DirecTV, itself and through its agents, on multiple occasions that he was not interested in receiving their services and requested that DirecTV place him on their do-not-call list. Despite such requests, Plaintiff continued to be repeatedly called by DirecTV, by and through its agents Alorica and Empereon, from several different phone numbers.

Defendants Alorica and Empereon left at least ninety voice mail messages for Plaintiff after Plaintiff was no longer a DirecTV customer. Defendants did not identify themselves by name in these messages and did not state that they were calling on behalf of DirecTV. When Plaintiff returned the telephone calls, he was told that the purpose of the call was to sell a new promotional offer for DirecTV subscription satellite television services.

Plaintiff has brought two claims against Defendants: one under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, and the other under the Georgia Public Utilities Code (GPUC), O.C.G.A. § 46–5–27. Defendant Alorica has moved to dismiss Plaintiff's GPUC claim because Plaintiff has failed to state a claim.

Complaint, Dkt. No. [21], solely for the purposes of this Order, and are construed in

## II. Discussion

Plaintiff argues that Defendants violated the GPUC when they knowingly made telephone solicitations to Plaintiff's residential telephone line without, at the beginning of such call, stating clearly the identity of the person or entity initiating the call. O.C.G.A. § 46–5–27(g)(1). Alorica argues that Plaintiff's GPUC claim should be dismissed because the calls Plaintiff received are not "telephone solicitations" within the meaning of the GPUC.

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A complaint or counterclaim is viewed in the light most favorable to the plaintiff, and all of the plaintiff's well-pleaded facts are accepted as true. Although a complaint or counterclaim need not contain detailed factual allegations, it must include enough facts to state 'a plausible claim for relief.'" United States v. Jallali, 478 Fed.Appx. 578, 579 (11th Cir. 2012) (emphasis added) (internal citation omitted) (quoting Iqbal, 556 U.S. at 679, 129 S.Ct. 1937). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678, 129 S.Ct. 1937.

Plaintiff's favor consistent with the Court's task on a Motion to Dismiss.

## B. Whether the Calls Were "Telephone Solicitations" Under the GPUC

■ Alorica argues that because Plaintiff had a prior business relationship with DirecTV, the calls Defendants made to Plaintiff were not "telephone solicitations" within the meaning of the GPUC and his GPUC claim should be dismissed. The GPUC defines telephone solicitation:

(3) "Telephone solicitation" means any voice communication over a telephone line for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, *but does not include communications:*

. . . .

(B) By or on behalf of any person or entity with whom a residential, mobile, or wireless subscriber has a *prior or current business or personal relationship* . . .

. . . .

O.C.G.A. § 46–5–27(b)(3) (emphasis added). Alorica asserts that because the First Amended Complaint "clearly and unequivocally alleges that Mr. Holcombe had a prior business relationship with DIRECTV during the period between 2010 and 2014," the calls Plaintiff received from Alorica "could never amount to 'telephone solicitations' within the meaning of the statute." Dkt. No. [24] at 6.

■ The question for the Court is how to interpret the term "telephone solicitation" in the GPUC as it relates to prior business relationships. The Georgia Supreme Court has enunciated how courts are to interpret Georgia statutes.[2] While courts may engage in "reasonable judicial construction," they may not engage in "substantial legislative revision" by "rewrit[ing] statutes" or "add[ing] a line to the law." State v. Fielden, 280 Ga. 444, 629 S.E.2d 252, 257 (2006). Moreover, "the literal meaning of the statute prevails unless such construction would produce unreasonable or absurd consequences not contemplated by the legislature." Johnson v. State, 267 Ga. 77, 475 S.E.2d 595, 596 (1996). "In fact, where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but *forbidden.*" Chase v. State, 285 Ga. 693, 681 S.E.2d 116, 118 (2009) (emphasis added) (internal quotations omitted).

In interpreting the GPUC, Plaintiff references the TCPA, which has an exemption for *terminated* established business relationships. The 1998 GPUC is similar to the 1991 TCPA in that both statutes relate to the prevention of unwanted telephone solicitations.[3] Furthermore, the "prior or current business . . . relationship" exemption to "telephone solicitation" in the GPUC is similar to the "established business relationship" exemption found in the TCPA, with one key difference. The GPUC makes no distinction between prior or current relationships,[4] whereas in 1992 the Federal Communications Commission (FCC) defined the TCPA's "established business relationship" as only applying when the "relationship has not been previ-

---

2. Because the Court has supplemental jurisdiction over Plaintiff's GPUC state law claim, it applies Georgia substantive law. Jones v. United Space Alliance, L.L.C., 494 F.3d 1306, 1309 (11th Cir. 2007).

3. Compare O.C.G.A. § 46–5–27(a)(7) ("It is in the public interest to establish a mechanism under which individual citizens of this state can decide whether or not to receive telemarketing calls."), with 47 U.S.C. § 227 (c)(1)

(discussing "the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object").

4. There is no distinction in the statute itself or the relevant regulations, and no Georgia court has construed the statute to create a distinction.

ously terminated by either party." 47 C.F.R. § 64.1200(f)(5). Because it is alleged that Plaintiff terminated its relationship with DirecTV, it is likely that Defendants' calls to Plaintiff would constitute "telephone solicitations" under the TCPA based upon the termination of the business relationship exemption. The question is whether the GPUC operates similarly.

Plaintiff argues that because the GPUC and the TCPA relate to the prevention of unwanted telephone solicitations, the statutes should be construed to harmonize together, or *in pari materia.* See Mathis v. Cannon, 276 Ga. 16, 573 S.E.2d 376, 384 (2002) ("It is an elementary rule of statutory construction that a statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes 'in pari materia,' are construed together."). Based upon this principle of statutory construction, Plaintiff asserts that the FCC definitions relating to the TCPA should be incorporated into the GPUC. Thus, Plaintiff argues the termination exemption promulgated by the FCC should also apply to the GPUC. Plaintiff further contends that "[i]f the General Assembly intended to depart from the federal interpretation of *telephone solicitation* so as to eliminate the right of termination, it would have done so expressly." Dkt. No. [34] at 6.

However, when the language of a statute is clear, the Court should not resort to this type of statutory interpretation. See Corey Outdoor Advertising, Inc. v. Board of Zoning Adjustments of City of Atlanta, 254 Ga. 221, 327 S.E.2d 178, 181 (1985) ("Even

statutes in pari materia may not be resorted to where the language of the statute under consideration is clear."). This is because "construing statutes together that separately are plain and unambiguous may create ambiguities where none exist." Mahalo Investments III, LLC v. First Citizens Bank & Trust Co., Inc., 330 Ga.App. 737, 769 S.E.2d 154, 156 (2015).

In this case, the language of the GPUC is clear. The GPUC unambiguously exempts prior business relationships from the definition of telephone solicitation, regardless of how the current business relationship ended. And unlike the TCPA, no agency has promulgated a termination exemption,[5] nor has any court construed the GPUC to limit the types of prior business relationships exempted. Therefore, because the language of the GPUC is unambiguous, use of the *in pari materia* principle of statutory construction is not appropriate.

Even if the Court found that the GPUC was ambiguous, *in pari materia* would still not apply because the GPUC and TCPA both use distinct language. "Different words used in the same, or a similar, statute are assigned different meanings whenever possible." 2A SUTHERLAND STATUTORY CONSTRUCTION§ 46:6 (7th ed. 2015).[6] The fact that the Georgia Legislature chose to use "prior or current business . . . relationship" instead of the TCPA's "established business relationship" indicates that those phrases should be assigned different meanings whenever possible. Moreover, the Georgia Legislature's deliberate use of different language eliminates the presump-

---

**5.** This includes terminating a current business relationship *or* a prior one. Therefore, under the plain language of the GPUC, there is no way to terminate a prior business relationship for purposes of the GPUC.

**6.** See also Berryhill v. Georgia Community Support and Solutions, Inc., 281 Ga. 439, 638 S.E.2d 278, 281 (2006) ("Where, as here, the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended.").

tion that the GPUC implicitly incorporates the FCC's definitions relating to the TCPA.

Plaintiff asserts that, in addition to their similar purposes, other similarities between the GPUC and TCPA demonstrate that the two statutes should be read as having the same meaning. Specifically, Plaintiff notes that (1) the GPUC's definition of telephone solicitation closely tracks the TCPA, and (2) subsequent amendments to the GPUC explicitly reference the TCPA. However, the Court finds that this demonstrates the opposite. The fact that O.C.G.A § 46–5–27(b)(3)'s telephone solicitation definition copies verbatim many of the phrases in 27 U.S.C. § 227(a)(4)'s telephone solicitation definition further demonstrates that O.C.G.A § 46–5–27(b)(3)'s unique phrases were chosen for a reason.[7]

Also, if the Court were to adopt whole cloth the FCC's limiting definitions for the GPUC, certain definitions may conflict with the plain meaning of *prior* in "prior ... business ... relationship." In order to fall within the definition of "established business relationship," the FCC requires, among other things, that (1) the subscriber purchase or transact with the business within eighteen months of the call or inquire or apply for products or services offered by the business within three months of the call, and (2) that the relationship not be previously terminated by either party. 47 C.F.R. § 64.1200(f)(5). If the FCC definitions were applied to the GPUC, a subscriber who purchased something from a business two years prior to the call, and inquired about that business's products six months prior to the call,

would not have a "prior ... business ... relationship" with that business. Therefore, the business's calls could constitute telephone solicitation. This construction significantly limits the *prior* in "prior ... business ... relationship."

Plaintiff further argues that construing the GPUC according to its plain meaning could lead to consequences that seem to contradict the purposes of the GPUC. Specifically, DirecTV "would be free to call Plaintiff for the next 50 years under the Georgia Act, regardless of whether Plaintiff registered on the Georgia do-not-call list and no matter how often Plaintiff begs them to stop or how much time has passed." Dkt. No. [34] at 10. Plaintiff contends that "[t]his interpretation clearly does not comport with Georgia's established interest in permitting 'individual citizens of this state [to] decide whether or not to receive telemarketing calls.'" Id. (quoting O.C.G.A. § 46–5–27(a)(7)).

However, courts do not disregard plain meaning in order to expand a statute's reach to better fit its purpose. Instead, "the literal meaning of the statute prevails unless such a construction would produce unreasonable or absurd consequences not contemplated by the legislature." Johnson v. State, 267 Ga. 77, 475 S.E.2d 595, 596 (1996). Plaintiff's hypothetical scenario is not "unreasonable or absurd" for several reasons. First, under the GPUC, Plaintiff is still protected from receiving telephone solicitations from the vast majority of all businesses because he presumably does not have a prior or current relationship with them. Therefore, the plain meaning of the GPUC still protects the State's interest in permitting individual citizens to de-

---

7. The same logic applies to other similarities between the two statutes. In general, the fact that the Georgia Legislature that drafted the GPUC in 1998 was aware of the 1991 TCPA makes the GPUC's unique phrases all the more important. See Hooters of Augusta, Inc., v. Nicholson, 245 Ga.App. 363, 537 S.E.2d 468, 471 (2000) ("We can certainly presume the legislature drafted OCGA § 46–5–27 with an awareness of the TCPA.").

cide whether to receive telemarketing calls.

Second, Plaintiff still may have a federal cause of action under the TCPA against businesses like Defendants. Third, the incorporation of the FCC definitions into the GPUC could undermine the GPUC's stated interest of "accommodat[ing] ... legitimate telemarketing practices." O.C.G.A. § 46–5–27(a)(6). Fourth, "[w]hile there may be compelling policy reasons to apply" the FCC's termination exemption to the GPUC, a "court of law is not authorized to rewrite the statute by inserting additional language that would expand its application." Abdulkadir v. State, 279 Ga. 122, 610 S.E.2d 50, 53 (2005). "Any expansion ... must come from the legislature, as it alone is entrusted with the authority to amend existing laws." Id. In fact, the Court has refused to deviate from the plain meaning of the GPUC in order to expand its application. See Franklin v. Facebook, 2015 WL 7755670, at *4–5 (N.D. Ga. Nov. 24, 2105) (noting that text messages do not constitute "telephone solicitation" under O.C.G.A. § 46–5–27 because "telephone solicitation" is defined as "*voice* communication over a telephone line") (emphasis added).

Lastly, as discussed earlier, if the Court were to adopt whole cloth the FCC definitions for the GPUC, certain definitions may conflict with the plain meaning of *prior* in "prior ... business ... relationship." And so, because abiding by the plain meaning of the GPUC does not lead to "unreasonable or absurd" results, the Court will utilize the plain meaning.[8]

Ultimately, under the plain meaning of the GPUC, Plaintiff has not properly pled a claim for telephone solicitations for purposes of O.C.G.A. § 46–5–27. Therefore, Defendant's Motion is **GRANTED**.

### III. Conclusion

Defendant's Motion to Dismiss for Failure to State a Claim [24] is **GRANTED**. Plaintiff's claim under the GPUC is **DISMISSED** as to Defendant Alorica, Inc.

**IT IS SO ORDERED** this 19th day of October, 2016.

8. Plaintiff notes that the FCC "has always equated the right to terminate a business relationship with the right to revoke consent," and that the Georgia Court of Appeals "has itself recognized the right to terminate a business relationship for the purposes of telephone solicitation under the TCPA." Dkt. No. [34] at 6-7. This argument is unavailing because the issue is not whether a person can terminate a business relationship for purposes of the TCPA, the FCC definitions are clear that they can. (Whether the business relationship is terminated by revoking consent or by some other way is beside the point.) Rather, the issue is whether a person can terminate a business relationship for purposes of the GPUC. And cases that only deal with the TCPA, even those from Georgia or the Eleventh Circuit, do not answer that question. In the end, just as the Court refuses to construe a general termination exemption in violation of the plain language of the GPUC, it also refuses to construe a termination exemption based on revocation of consent.