S97A1698. KEMP et al. v. CITY OF CLAXTON et al.
S97A1884. CITY OF CLAXTON et al. v. WOMBLE et al.
(496 SE2d 712)

HINES, Justice.

These cases involve petitions to amend by referendum resolutions of the City of Claxton to close certain railroad grade crossings. In the center of Claxton, railroad tracks maintained by the Georgia Central Railway essentially run down the middle of the street. One side is named Main Street and the other Railroad Street. No buildings abut the tracks; the nearest buildings are on the side of Main and Railroad Streets away from the tracks. Newton Street and Peters Street perpendicularly cross the tracks, and cross Main and Railroad Streets.

In a resolution dated April 7, 1997, the Mayor and City Council concluded that the railroad crossings at Newton Street and Peters Street presented an unreasonable danger to the public and resolved to close those two crossings in the interest of public safety, pursuant to a plan originally proposed by the Georgia Central Railway. Kemp, and others who either are residents or own businesses in Claxton, sued to enjoin the City from enforcing the closure resolution on the ground that the City violated OCGA § 32-7-2 (c), which concerns procedures for declaring a city street abandoned. The plaintiffs claim that closing the crossings will reduce customer access to various businesses by disrupting the traffic flow on Newton Street, Peters Street, Main Street, and Railroad Street.

The superior court granted a temporary restraining order and set a hearing to determine whether permanent injunctive relief was required. Plaintiffs then submitted two petitions to amend by referendum the April 7, 1997, resolution, and to amend a resolution of February 17, 1997, which resolved not to oppose the Georgia Central Railway's proposal to close the crossings. The City Clerk refused to accept the petitions or approve the form, contending that OCGA § 36-35-3 (b) (2), authorizes a referendum only if it affects the city charter, and because the resolutions enacted by the Mayor and Council did not affect the city charter, no petition for referendum could lie.

Plaintiffs amended their complaint to allege that OCGA § 36-35-3 (b) (2) entitled them to initiate petitions for referendums to amend or repeal these resolutions. They moved to add the City Clerk as a party defendant and asked that the court issue a writ of mandamus

to require the Clerk to accept and approve the form of the requested petitions. They also requested a temporary injunction until they received just compensation for injury to their respective properties, or until referendums on the City's resolutions could be conducted.

The superior court denied injunctive relief. It found, however, that plaintiffs had the right to pursue repeal or amendment of the resolutions by petition and referendum and granted plaintiffs' motion to add the City Clerk as a party defendant so that plaintiffs could pursue mandamus. In a subsequent order, the court refused to issue a writ of mandamus. Although the court agreed with the plaintiffs that OCGA § 36-35-3 (b) (2) allowed them to file petitions for referendums to amend resolutions of this kind, upon review of the proposed petitions the court determined that mandamus was not appropriate because the plaintiffs were attempting to enact original legislation by popular vote, a power the court concluded was not authorized by OCGA § 36-35-3 (b) (2).

Thereafter, Womble and others submitted two petitions for referendums that sought only to repeal, not amend, the April 7, 1997, resolution, and to repeal a January 16, 1990, resolution that stated the City approved of, and would help with, state efforts to widen to four lanes the federal highway of which Main Street is a part.[1] The City Clerk also refused to accept these petitions for filing, and Womble and his fellow petitioners instituted a new action seeking, inter alia, a writ of mandamus to compel the City Clerk to accept the petitions and approve their form. The court granted the writ after concluding that the City Clerk was obligated to accept and approve the petitions under OCGA § 36-35-3 (b) (2) (C).

In S97A1698, Kemp and his fellow plaintiffs appeal the court's refusal to enjoin the City from eliminating the railroad crossings until just compensation had been paid. They also appeal the court's ruling that their petitions did not properly seek to amend the resolutions under OCGA § 36-35-3 (b) (2). In S97A1884, the City of Claxton appeals the court's grant of mandamus requiring the City Clerk to accept and approve for circulation the two petitions submitted by Womble and his fellow plaintiffs.

*Case No. S97A1884*

1. We first address the appeal from the most recent order. The City contends that the court erred in granting mandamus because the resolutions at issue did not affect the City's charter and the petitions were therefore unauthorized.

---

[1] Plaintiffs oppose this resolution because they contend the purpose of the April 7, 1997, resolution was merely to effectuate the January 16, 1990, resolution.

OCGA § 36-35-3 (b) states that "a municipal corporation may, as an incident of its home rule power, amend its charter by following either of the following procedures," set forth in subdivisions (1) and (2).[2] OCGA § 36-35-3 (b) (2) (A) provides:

> Amendments to charters or amendments to or repeals of ordinances, resolutions, or regulations adopted pursuant to subsection (a) of this Code section may be initiated by a petition, filed with the governing authority of the municipal corporation, containing, in cases of municipal corporations with a population of 5,000 or less, the signatures of at least 25 percent of the electors registered to vote in the last general municipal election . . . .[3]

The superior court determined that this language allowed a petition to amend or repeal any ordinance, resolution, or regulation enacted by the Mayor and Council. The City urges that the petition and referendum procedure is available only to amend the city charter, or repeal an amendment to the charter, not to amend the type of resolution at issue here. Although OCGA § 36-35-3 was enacted as part of the Municipal Home Rule Act of 1965, this is a question of first impression.

The cardinal rule of statutory interpretation is to ascertain the legislative intent, "keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a); *Miller v. Ga. Ports Auth.*, 266 Ga. 586, 587 (1) (470 SE2d 426) (1996). A primary purpose of the Municipal Home Rule Act was to authorize municipalities to amend their charters by their own actions. *Sadler v. Nijem*, 251 Ga. 375, 376 (306 SE2d 257) (1983). The Act was passed under the authority of a 1954 amendment to the Constitution of the State of Georgia, which is currently found at Art. IX, Sec. II, Par. II. Prior to the 1954 amendment and the Home Rule Act of 1965, city charters were amendable only by acts of the General Assembly. See *Sadler*, supra; *Phillips v. City of Atlanta*, 210 Ga. 72 (77 SE2d 723) (1953). The two procedures of OCGA § 36-35-3 (b) were enacted to relieve the General Assembly of its earlier burden of separately amending each and every city charter in the state.

Moreover, a statute is to be read as a whole, and the spirit and intent of the legislation prevails over a literal reading of the language. *Hargrove v. State*, 253 Ga. 450, 452 (1) (321 SE2d 104) (1984);

---

[2] OCGA § 36-35-3 (b) (1) pertains to amending the charter by ordinances adopted by the municipal governing authority and is not applicable here.

[3] It is uncontested that the population of the City of Claxton is less than 5,000 as recorded in the 1990 U. S. Census.

*Sirmans v. Sirmans*, 222 Ga. 202, 204 (149 SE2d 101) (1966). The legislative intent will be effectuated even if some language must be eliminated. *Maples v. City of Varnell*, 244 Ga. 163, 164 (259 SE2d 94) (1979). The language upon which the superior court relied is the reference to "amendments to or repeals of ordinances, resolutions, or regulations," found in OCGA § 36-35-3 (b) (2) (A). All of OCGA § 36-35-3 (b) is prefaced by a statement that what follows are the methods by which a municipal corporation may "amend its charter." This also shows that the petition and referendum provision is intended to be available only when the proposed amendment is intended to affect a city charter.

Further, when examined in the context of the structure of OCGA § 36-35-3, the very concept of home rule suggests that the provisions of (b) (2) apply only to charter amendments. Municipal corporations are creations of the state, possessing only those powers that have been granted to them, and allocations of power from the state are strictly construed. *Porter v. City of Atlanta*, 259 Ga. 526 (384 SE2d 631) (1989). Municipal home rule power is a delegation of the General Assembly's legislative power to the municipalities. Ga. Const. of 1983, Art. IX, Sec. II, Par. II; *Cooper v. City of Gainesville*, 248 Ga. 269, 270 (282 SE2d 322) (1981); *Plantation Pipe Line Co. v. City of Bremen*, 227 Ga. 1, 6 (1) (178 SE2d 868) (1970). OCGA § 36-35-3 (a) specifies that the delegation of legislative power is to "[t]he governing authority," which is the Mayor and Council. See *Savage v. City of Atlanta*, 242 Ga. 671, 674-675 (1) (251 SE2d 268) (1978). Under an interpretation of OCGA § 36-35-3 (b) (2) that would allow the electorate to petition for a referendum on all ordinances and resolutions, the electorate would be exercising legislative power. As we must strictly construe the grant of legislative power to the governing authority, we must reject plaintiffs' argument that the electorate can directly exercise such general legislative power.

The petition procedure of OCGA § 36-35-3 (b) (2) applies only to amendments to municipal charters. Consequently, the superior court erred in granting mandamus and requiring that the City Clerk accept and approve the petitions at issue.

### Case No. S97A1698

2. The superior court refused to issue a writ of mandamus requiring the City Clerk to accept and approve the form of the petitions that proposed amendments to the resolutions. The court determined that although plaintiffs did have the right to use the petition and referendum mechanism of OCGA § 36-35-3 (b) (2) to amend ordinances and resolutions that did not affect the city charter, the proposed petitions would adopt resolutions contrary to the ones already

passed and could not be considered "amendments." As the procedure set forth in OCGA § 36-35-3 (b) (2) is available only for proposed amendments to the city charter, and the resolutions at issue do not affect the charter, a writ of mandamus was not warranted. See Division 1, supra.

3. Citing *MARTA v. Datry*, 235 Ga. 568, 575 (220 SE2d 905) (1975), the plaintiffs contend that they have a right to access to Newton and Peters Streets and that they cannot be deprived of that right without just and adequate compensation. However, their reliance on *Datry* is misplaced. In that case the road along which plaintiffs' property was located was to be completely cut off from vehicular traffic, and the right at issue was access to "the *abutting* public road and from there to the system of public roads." Id. (Emphasis supplied.) None of plaintiffs' properties abut the two street sections to be closed. The only portions of the roads that are to be closed are those sections that cross the railroad right of way. No access to the public road system from plaintiffs' property is affected.

Rather, the plaintiffs' complaint is based on inconvenience of access. Such inconvenience of access is compensable only if it is determined that the inconvenience is special to the landowner and not that shared by the public in general. *Dept. of Transp. v. Bridges*, 268 Ga. 258, 259 (486 SE2d 593) (1997). The fact that the closings would make access to plaintiffs' properties from Main Street more circuitous or that the closings would change the traffic flow does not make the closings compensable. Id.

*Judgment affirmed in Case No. S97A1698 and reversed in Case No. S97A1884. All the Justices concur.*

DECIDED MARCH 9, 1998.

*D. Jay Stewart, Fletcher Farrington,* for Kemp and Womble.
*Callaway, Neville & Brinson, William E. Callaway, Jr.,* for City of Claxton.