## S98A1027. CITY OF CENTERVILLE et al. v. CITY OF WARNER ROBINS.
### (508 SE2d 161)

SEARS, Justice.

The City of Centerville appeals the Houston County Superior Court's ruling that, under the terms of a 1995 consent agreement it entered into with the City of Warner Robins, it is estopped from seeking to provide water and sewer services beyond the boundaries of a tract of land described in the consent agreement. Because we find no error in the superior court's construction of the consent agreement's terms, we affirm.

In November 1995, the Superior Court of Houston County, Judge George F. Nunn, Jr. presiding, entered a consent order ("the 1995 Consent Order") intended to resolve a dispute between the cities of Warner Robins and Centerville concerning annexation and the provision of water and sewer services. The 1995 Consent Order described by metes and bounds a tract of land in Houston County, and designated it as the exclusive water and sewer service area of Centerville ("the Centerville service area"). Additionally, the 1995 Consent Order provided that all areas "within and without" the Centerville service area that were then presently served by either Warner Robins or Centerville would continue to be served by the respective municipality, and that neither municipality could provide services to areas within the exclusive area of the other municipality without first obtaining written consent. Furthermore, both municipalities were estopped from "entertain[ing], accept[ing], or approv[ing] of an annexation petition or request which includes territory or property within the water or sewer service area of the other party." Finally, both municipalities were permanently enjoined from violating the terms of the 1995 Consent Order. The 1995 Consent Order was drafted and presented to the superior court by attorneys for Centerville, and its contents were consented to by Warner Robins's counsel.

In 1997, Warner Robins learned that Centerville had begun preparations to provide water and sewer service to an area west of Highway 41, which was outside of the Centerville service area. Warner Robins filed a complaint seeking injunctive relief and a finding of contempt against Centerville. Shortly thereafter, a hearing on the matter was held before the Houston County Superior Court, again with Judge Nunn presiding.

In February 1998, a second order was entered by the superior court ("the 1998 Order"). In that order, the court detailed its recollection of what transpired at the time that the 1995 Consent Order was presented to the court by Centerville's counsel. The court noted that when the 1995 Consent Order was presented by Centerville's counsel, both municipalities stipulated their consent to all terms and con-

ditions contained in the order, and expressed an intention to resolve their then-pending dispute over which areas of Houston County would receive water and sewer service from which municipality.[1] None of the terms of the 1995 Consent Order were contested by either party. Accordingly, in the 1998 Order, the superior court concluded that the 1995 Consent Order was a consent agreement entered with the intent of establishing exclusive service areas for both Centerville and Warner Robins. The 1998 Order also concluded that the 1995 Consent Order had set forth (1) Centerville's exclusive service area as that described in the metes and bounds description, and (2) Warner Robins's exclusive area as "all that area outside the Centerville exclusive service area." Based upon these conclusions, the 1998 Order permanently enjoined Centerville from proceeding with its plan to provide water and sewer service west of Highway 41. In March 1998, the 1998 Order was amended on motion for clarification to also enjoin Centerville from annexing any of the property contained in Warner Robins's exclusive service area.

1. Contrary to Centerville's contention, the superior court properly treated the 1995 Order as a consent judgment. Generally speaking, a consent judgment differs from a judgment rendered on the merits in that it results from an affirmative act of the parties rather than the considered judgment of the court following litigation of the issues.[2] A consent judgment is one entered into by stipulation of the parties with the intention of resolving a dispute,[3] and generally is brought to the court by the parties so that it may be entered by the court, thereby compromising and settling an action.[4] The voluntary nature of a consent judgment is among its most notable characteristics.[5]

In the 1998 Order, the Houston County Superior Court detailed the circumstances under which the 1995 Order was presented to that same court, and noted among other things, that the 1995 Order was presented to the court after the parties had participated in mediation that almost settled the case. Following that mediation, the parties met alone in an effort to settle the controversy, and the 1995 Order was the culmination of that settlement effort. Both parties were in agreement with the terms of the order, and both parties expressed a desire that the court enter the order and thereby bring an end to the controversy. Accordingly, for these reasons, we agree with the supe-

---

[1] Warner Robins's counsel made this stipulation via telephone conference with the superior court at the time that the 1995 Consent Order was presented by Centerville's counsel.

[2] 46 AmJur2d 296, § 208.

[3] Id.

[4] Id. § 207.

[5] Id. § 211.

rior court that the 1995 Order was a consent order.

2. Centerville argues that in the 1998 Order, the superior court erred by ruling that Centerville is estopped from seeking to annex property in the Warner Robins service area, because the power of annexation is a legislative function that is not subject to control by the judiciary, although it can be delegated by the legislature to municipalities.[6] However, the superior court in this matter did not seek to usurp for itself control over the legislative function of annexation. Rather, it merely enforced Centerville's agreement in the 1995 Consent Order not to "entertain, accept, or approve of an annexation petition or request which includes territory or property within the water and/or sewer service area of [Warner Robins]." It is axiomatic that "a party is . . . bound by a ruling which [it] invoked, and by a judgment . . . which [it] procured."[7] In plain terms, Centerville agreed in the 1995 Consent Order not to seek the annexation of property that rightfully was within Warner Robins's service area, and the superior court merely enforced that agreement in its 1998 Order.[8]

3. Centerville argues that the superior court erred by concluding that the 1995 Consent Order designated Warner Robins's exclusive service area as all that area in Houston County outside of Centerville's exclusive service area. The 1995 Consent Order provided that:

[T]he exclusive water and sewer service area of the City of Centerville shall be described as follows: [lengthy metes and bounds description].

---

[6] See *Plantation Pipe Line Co. v. City of Bremen*, 227 Ga. 1 (178 SE2d 868) (1970). See generally *Kemp v. City of Claxton*, 269 Ga. 173, 176 (469 SE2d 712) (1998).

[7] *Kaiser v. Kaiser*, 195 Ga. 774 (25 SE2d 665) (1943).

[8] The dissent points out correctly that the legislature's authority to annex municipal property is plenary. See *City of Ft. Oglethorpe v. Boger*, 267 Ga. 485, 486 (480 SE2d 186) (1997). The dissent also is correct that in the 1995 Consent Order, Centerville and Warner Robins were not authorized to make any agreement that would seek to limit the General Assembly's inherent power to annex municipal property. Any such agreement would be invalid, as would any attempt to enforce it. See id. However, consistent with the 1954 Home Rule Act (Ga. Const. (1983), Art. IX, Sec. II, Par. II), the General Assembly has enacted statutes that delegate a limited power of annexation to municipalities. See OCGA §§ 36-36-20 ("the 100% method"); 36-36-30 ("the 60% method"); and 36-36-50 ("the majority method"). The annexation powers conferred by these statutes are exercisable by municipalities acting alone at the local level. Having been granted these powers, nothing prevented Centerville and Warner Robins from covenanting in the 1995 Consent Order not to exercise them. We respectfully note that the case law relied upon by the dissent in arguing otherwise is either foreign, inapplicable, or factually distinguishable. See, e.g., *Macon Street R. Co. v. City of Macon*, 112 Ga. 782 (38 SE 60) (1901) (pre-dates the 1954 Home Rule Act); *Brown v. City of East Point*, 246 Ga. 144 (268 SE2d 912) (1980) (city council may not by ordinance bind its successors to make incremental pay raises to city employees). We emphasize, however, that neither the 1995 Consent Order nor the 1998 Order have any impact whatsoever on the General Assembly's plenary authority to annex municipal property.

Additionally, all the areas within and without the above described territory which are presently being served by either municipality with water or sewer services shall continue to be served by the respective municipality unless a majority of the respective municipal governing authority surrenders that right in writing to the other municipality.

[N]either municipality shall provide water and/or sewer services to the areas within the exclusive service area of the other party municipality without the express written consent of the party municipality having the right to provide water and/or sewer service to the area.

Thus, while the 1995 Consent Order designated Centerville's exclusive service area as the tract described by metes and bounds, it did not make a similar designation for Warner Robins's service area. Nonetheless, we agree with the superior court that the terms of the 1995 Consent Order indicate a mutual intention that both Centerville and Warner Robins were to be assigned exclusive service areas. As shown above, the Order prohibits either party from providing water or sewer services to areas within the other party's exclusive domain. That clause would be void of meaning and mutuality if Centerville was assigned an exclusive service area, and Warner Robins was not.

We also agree with the superior court that the 1995 Consent Order is unclear as to what portion of Houston County was to be assigned as Warner Robins's exclusive service area. While the 1995 Order meticulously details the boundaries of Centerville's service area, it merely forbids Centerville from attempting to service Warner Robins's service area, without specifying that area's parameters. Because the 1995 Order is a consent order, the trial court did not err by referring to the record in order to construe this ambiguous portion of the Order. As discussed in Division 1 above, a consent order is essentially a binding agreement of the parties that is sanctioned by a court, and it is subject to the rules governing the interpretation and enforcement of contracts.[9] Accordingly, a consent order can be construed according to the general rules of contract construction,[10] and where there is ambiguity in a consent order, it should be clarified with reference to the record as a whole.[11] As in all contracts, the car-

---

[9] 46 AmJur2d 298, § 210. See *Walker v. Virtual Packaging, LLC*, 229 Ga. App. 124, 127-128 (493 SE2d 551) (1997).

[10] 46 AmJur2d 298, § 210. See *Walker*, supra; *Collins v. Collins*, 148 Ga. App. 103 (250 SE2d 870) (1978).

[11] *Latimore v. Intl. Business Investments*, 189 Ga. App. 306 (375 SE2d 507) (1988).

dinal rule in interpreting ambiguity in a consent order is to determine the intention of the parties.[12] In construing the 1995 Order, the superior court did just that by considering the testimony of Warner Robins's mayor that in the negotiations that led up to the creation of the 1995 Consent Order, the parties clearly understood that all areas not within the exclusive service area of Centerville would be the exclusive domain of Warner Robins. The record also shows that, after the 1995 Consent Order was entered, Centerville's actions were consistent with an understanding that its exclusive service area was limited to that described by metes and bounds in the Order.[13] Accordingly, we cannot say that the superior court erred in construing the 1995 Consent Order to assign Warner Robins's exclusive service area as "all that area outside the Centerville exclusive service area."[14]

*Judgment affirmed. All the Justices concur, except Hunstein and Carley, JJ., who dissent.*

CARLEY, Justice, dissenting.

I concur in Divisions 1 and 3, but dissent to Division 2, wherein the majority holds that there was no judicial usurpation of the legislative function of annexation because Centerville agreed not to seek the annexation of property within Warner Robins' service area. In my opinion, Centerville has no power to agree that it will not annex property and, consequently, the superior court does not have the power to enjoin annexation by Centerville, whether by consent or otherwise.

"[T]he General Assembly's power to annex municipal property is plenary. . . ." *City of Ft. Oglethorpe v. Boger*, 267 Ga. 485, 486 (480 SE2d 186) (1997). The "home rule" provision of the Georgia Constitution of 1983, Art. IX, Sec. II, Par. II, authorizes the General Assembly to delegate its legislative power of annexation to municipalities. *Plantation Pipe Line Co. v. City of Bremen*, 227 Ga. 1, 6-7 (1) (178 SE2d 868) (1970). However, "municipalities can receive and retain only such legislative power of the General Assembly as that body determines from time to time they should exercise." *Plantation Pipe Line Co. v. City of Bremen*, supra at 7 (1). "Municipal corporations are creations of the state, possessing only those powers that have been

---

[12] *Walker*, supra; *Lothridge v. First Nat. Bank of Gainesville*, 217 Ga. App. 711 (458 SE2d 887) (1995).

[13] Specifically, Centerville complied with Warner Robins's request that it disconnect Centerville water service to a new retail store located outside the metes and bounds description set forth in the 1995 Consent Order.

[14] We need not decide whether the superior court erred in construing the 1995 Consent Order by considering notations taken during settlement negotiations, because even if such evidence should have been excluded, the evidence discussed above was a sufficient basis for the court's construction of the 1995 Consent Order.

granted to them, and allocations of power from the state are strictly construed. [Cit.]" *Kemp v. City of Claxton*, 269 Ga. 173, 176 (1) (496 SE2d 712) (1998) (rejecting a direct exercise of legislative power by the electorate). Nothing in the statutes by which the General Assembly has delegated its legislative annexation power, OCGA § 36-36-1 et seq., can be construed to permit a municipality to relinquish its authority to property even by the terms of an agreement with another municipality. See *Village of Long Grove v. Village of Kildeer*, 497 NE2d 319, 320 (Ill. App. 2 Dist. 1986).

Furthermore, a city "council may not, by an ordinance, bind itself or its successors so as to prevent free legislation in matters of municipal government." OCGA § 36-30-3 (a). "What can not be done by an ordinance can not be done by a contract." *Screws v. City of Atlanta*, 189 Ga. 839, 843 (2) (8 SE2d 16) (1940).

> "Powers are conferred upon municipal corporations for public purposes; and as their legislative powers can not . . . be delegated, so they can not be bargained or bartered away. Such corporations may make authorized contracts, but they have no power, as a party, to make contracts or pass by-laws which shall cede away, control, or embarrass their legislative or governmental powers, or which shall disable them from performing their public duties." [Cit.]

*Horkan v. City of Moultrie*, 136 Ga. 561, 563 (1) (71 SE 785) (1911). See also *Macon Street R. Co. v. City of Macon*, 112 Ga. 782, 785 (2) (38 SE 60) (1901). Compare Ga. Const. of 1983, Art. IX, Sec. III, Par. I (authorizing intergovernmental services contracts). A contract restricting those functions of a city council which are not proprietary, but which are governmental or legislative, has been held to be a nullity, ultra vires, and void. "[T]he municipality would not be estopped from asserting the invalidity of such a contract at any time. [Cits.]" *Brown v. City of East Point*, 246 Ga. 144 (268 SE2d 912) (1980). See also *Barr v. City Council of Augusta*, 206 Ga. 750 (2, 3) (58 SE2d 820) (1950).

The annexation power is strictly legislative. *Jamison v. City of Atlanta*, 225 Ga. 51 (1) (165 SE2d 647) (1969). Thus, an agreement between two municipalities for each to refrain from accepting annexation petitions without the consent of the other is null and void. *Village of Long Grove v. Village of Kildeer*, supra at 320-321; *City of Leeds v. Town of Moody*, 319 S2d 242, 246 (Ala. 1975). Neither municipality is estopped from challenging the legality of such an agreement. *Village of Lisle v. Village of Woodridge*, 548 NE2d 1337, 1342 (Ill. App. 2 Dist. 1989); *City of Leeds v. Town of Moody*, supra. I believe that it is fundamental that a city council cannot deprive or

restrict itself or its successors in the exercise of its annexation power by entering into a contract or agreement purporting to limit its authority to annex. See *Barton v. Atkinson*, 228 Ga. 733, 744 (3) (187 SE2d 835) (1972) (involving a county commission's authority to rezone). The consent order here was an ultra vires attempt on the part of the Mayor and Council of Centerville "to tie their hands, as well as those of their successors, with respect to a matter of great public interest." *Macon Street R. Co. v. City of Macon*, supra at 785 (2). Thus, Centerville is neither estopped from asserting the invalidity, ab initio, of its alleged agreement not to annex, nor is it precluded from enumerating in this appeal that the trial court erred in issuing an injunction based upon the void consent order.

Centerville's agreement not to annex property is not rendered valid merely because of its inclusion in a consent order regarding water service areas. "Like the power to zone, the power to annex is distinct from the power to plan for the use of land outside the borders of a municipality. ([Cit.])" *Village of Long Grove v. Village of Kildeer*, supra at 320. "A compromise will not be recognized as valid where the contract of compromise itself represents an ultra vires agreement." 56 AmJur2d 812, Municipal Corporations, § 814. Although the legislature may confer power on the courts to ascertain a state of facts under which a statute is applicable, "the legislature cannot delegate legislative power to the courts." *Harrell v. Courson*, 234 Ga. 350, 352 (216 SE2d 105) (1975).

In my opinion, the trial court erred in enjoining Centerville from annexing any property contained within Warner Robins' service area. See *City of Leeds v. Town of Moody*, supra. Therefore, I respectfully dissent to Division 2 and to the judgment of affirmance.

I am authorized to state that Justice Hunstein joins in this dissent.

DECIDED OCTOBER 26, 1998 —
RECONSIDERATION DENIED NOVEMBER 20, 1998.

*Henry G. Smith, Davis, Gregory, Christy & Forehand, Hardy Gregory, Jr.*, for appellants.

*Walker, Hulbert, Gray & Byrd, David G. Walker, Charles W. Byrd, Kellye C. Moore, James E. Elliott, Jr.*, for appellee.