**BURLINGTON INDUSTRIES, INC., Plaintiff,**

v.

**SOLUTIA, INC., Defendant.**

**No. CIV.1:01 CV 00741.**

United States District Court, M.D. North Carolina.

April 9, 2003.

---

James T. Williams, Jr., Mack Sperling, James Conrad Adam, II, Brooks Pierce McLendon Humphrey & Leoanrd, Greensboro, NC, Robert A. Wicker, Greensboro, NC, for plaintiff.

William Kearns Davis, Daniel Alan M. Ruley, Troy Douglas Cahill, Bell Davis & Pitt, P.A., Winston–Salem, NC, John Norris, Craig Lundell, Howrey Simon Arnold & White, LLP, Houston, TX, for defendant.

### MEMORANDUM OPINION

BULLOCK, District Judge.

Plaintiff Burlington Industries, Inc. ("Plaintiff") filed this action on July 18, 2001, in Guilford County Superior Court seeking to enjoin Defendant Solutia, Inc. ("Defendant") from selling nylon yarn dyed by a certain process to carpet manufacturers for making stain resistant carpets in competition with Plaintiff. Defendant removed to this court pursuant to 28 U.S.C. § 1338(a). Plaintiff alleges claims for breach of contract, violation of the North Carolina Unfair and Deceptive Trade Practices Act, tortious interference with contract, and conspiracy. This action is presently before the court on Plaintiff's motion for an injunction and Defendant's motion for summary judgment. However, both parties agree that there are no material facts in dispute and that the issue is one of law for the court.

### FACTS

The following material facts are undisputed. Plaintiff is a corporation involved in the carpet industry with its principal

place of business in Greensboro, North Carolina. In 1995, Plaintiff sued Rossville Yarn, Inc. ("Rossville"), a Georgia corporation, in the United States District Court for the Northern District of Georgia for infringement of certain claims in two of Plaintiff's patents (the "Georgia lawsuit"). Plaintiff's patents concern dyeing processes, which Plaintiff calls its "DURACOLOR" process, in which negatively charged cationic dyeable nylon is dyed with negatively charged acid dyes. Rossville's process, called the "Prismatic" process, which was at issue in the Georgia lawsuit, involved dyeing cationic dyeable nylon (provided by Defendant) with fiber reactive acid dyes. This process was described in two patents owned by Rossville. In response to Plaintiff's claims, Rossville asserted counterclaims that Plaintiff's patents were invalid, unenforceable, and not infringed. After four years of litigation, the Georgia lawsuit was settled on January 5, 2000, through the execution of a Consent Decree, which incorporated a License Agreement and a Settlement Agreement (collectively "the Agreements") between Plaintiff and Rossville. The Consent Decree provided that Plaintiff Burlington's and Defendant Rossville's patents were valid and enforceable and would not thereafter be challenged by the other party. It further provided that the parties would execute license and settlement agreements, that all claims and counterclaims which were asserted or could be asserted were resolved, and that Rossville's antitrust lawsuit against Burlington was dismissed with prejudice. The Settlement Agreement also provided that "no implied licenses or agreements are created by the license executed by the parties." Later in January 2000, Defendant purchased the "Prismatic" patents from Rossville and from Custom Equipment Leasing, Inc., a related company.

Plaintiff's verified amended complaint, based on the settlement of the Georgia lawsuit, alleges claims for breach of contract, violation of the North Carolina Unfair and Deceptive Trade Practices Act, tortious interference with contract, and conspiracy. Defendant denies these claims, averring that Plaintiff's only course of action is to sue for patent infringement, not breach of contract. Defendant also alleges that Plaintiff's patents' scope does not cover the conduct of Rossville or Defendant and that Plaintiff's patents are invalid because of misconduct in the patent process. These later claims by the Defendant were bifurcated, with discovery and trial of Plaintiff's claims first.

## DISCUSSION

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [fact finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove its case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere

existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505.

Plaintiff seeks to enjoin Defendant from selling dyed nylon fiber which might be used by carpet manufacturers for making certain stain-resistant carpets. Plaintiff claims that it is entitled to such an injunction because Defendant is bound by the Agreements between Plaintiff and Rossville, which allegedly prohibit Rossville from selling its dyed nylon fiber for use in certain types of carpets. Consequently, Plaintiff is bringing this action against Defendant to enjoin Defendant's sale of its dyed nylon fiber to carpet manufacturers for uses "prohibited" under the Agreements.

Although it disputes that it is bound under the Agreements, Defendant primarily argues that Plaintiff cannot maintain its breach of contract claim because the Agreements do not contain the "prohibition" Plaintiff alleges. Because the License Agreement contains no "prohibition," Defendant claims that it is nothing more than a covenant not to sue Rossville under a limited patent license. Thus, if Plaintiff alleges that Defendant has sold its dyed nylon fiber for an unlicensed use, its only recourse is to sue for patent infringement.[1] Furthermore, because Plaintiff's other causes of action are predicated on the breach of contract claim, Defendant claims that they should also be dismissed.

The issue for the court is the legal interpretation of the Agreements involved. The license grant in question states:

Licensor hereby *grants* to Licensee, its licensees, successors and assigns, a non-exclusive paid-up right and license to produce nylon yarn by dyeing cationic dyeable nylon with fiber reactive dyes and a pH of no higher than pH 1.5 and applying an alkaline solution to produce covalent bonds between the dyes and the fibers in the United States of America, its territories and possessions (the "Licensed Territory") (1) for use in making mats and rugs; and (2) for use in carpet in blends with a preponderance of acid dyeable nylon dyed with acid dyes or cationic dyeable nylon dyed with cationic dyes, *but not* in blends with cationic dyeable nylon dyed with acid dyes or with solution dyed (pigmented or otherwise) nylon.

(Def.'s Br. Supp. Mot. Summ. J., Ex. B License Agreement, ¶ 1.A (emphasis added).) Plaintiff claims that this statement in the License Agreement not only granted Rossville a license to produce dyed nylon yarn for certain uses, but also prohibited it from producing its yarn for other uses. Defendant rejects this conclusion and argues that the license contains no return promise of any kind by Licensee, express or implied. As a result, Defendant claims that the License Agreement contains nothing more than a grant of a limited patent license to Rossville and a covenant not to sue by Plaintiff.

*Applicable Law*

■■■ Contract construction is a matter of law.[2] O.C.G.A. § 13-2-1; *Claussen v. Aetna Cas. & Sur. Co.*, 259 Ga. 333, 334, 380 S.E.2d 686, 687 (1989). A consent decree or order is essentially a binding

---

1. Because the court agrees with Defendant that the Agreements contain no "prohibition," the court does not need to address whether Defendant is actually subject to or bound under the Agreements.

2. The Agreements will be interpreted under Georgia law. (*See* Def.'s Br. Supp. Mot. Summ. J., Ex. B, ¶ 7.) ("This Agreement is to be interpreted and construed according to the internal laws of the State of Georgia.")

agreement and is construed as a contract. *See City of Centerville v. City of Warner Robins,* 270 Ga. 183, 186–87, 508 S.E.2d 161, 165 (1998). In interpreting a contract, the court must determine whether the terms of the contract are ambiguous. *Associated Mech. Contractors v. Martin K. Eby Constr. Co.,* 964 F.Supp. 1576, 1580 (M.D.Ga.1997). Ambiguity has been defined as "duplicity, indistinctness, an uncertainty of meaning or expression." *Salvatori Corp. v. Rubin,* 159 Ga.App. 369, 372, 283 S.E.2d 326, 328 (1981). Where the language is unambiguous, the court will not consider the surrounding circumstances to interpret the contract. *Id.* "However, where an ambiguity exists the court has the duty of resolving the ambiguity by applying the rules of construction set forth in O.C.G.A. § 13–2–2." *City of Centerville,* 270 Ga. at 187, 508 S.E.2d at 165.

*The Agreements*

■ In the present case, the License Agreement was incorporated into the Consent Decree, along with the Settlement Agreement between Plaintiff and Rossville. After reviewing all three documents, the court finds the Agreements to be unambiguous and clear on their face. Looking to the License Agreement itself and in conjunction with the two other agreements, it is evident that the license grant does not contain any "prohibition," express or implied, which would contractually limit Defendant from selling its dyed nylon yarn to carpet manufacturers for certain uses.

*Express Prohibition*

Plaintiff argues that the prohibition against Rossville's "out-of-field" use is contained in the "express restriction" of the license grant beginning with the words "but not." (Pl.'s Br. Opp'n Def.'s Mot. Summ. J. at 9.) Plaintiff contends that this "but not" clause "dictates the type of carpet product which Prismatic Yarn could not be used in." *Id.* This reading of the wording of the license, however, is strained. Reading the words of the grant together, Plaintiff, as Licensor, is granting to Rossville, as Licensee, a "non-exclusive paid-up right and license" under its patents to produce certain types of yarn for use in certain types of mats, rugs, and carpets. The "but not" clause is simply limiting the grant of this patent license to certain defined uses.

After reviewing the License Agreement, Settlement Agreement, and Consent Decree, it is apparent that Plaintiff and Rossville entered into a patent license agreement. As the Federal Circuit has held, a patent license agreement "is in essence nothing more than a promise by the licensor not to sue the licensee" for patent infringement. *Spindelfabrik Suessen–Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft,* 829 F.2d 1075, 1081 (Fed.Cir. 1987).

■ Limiting grants of a patent license to certain uses is nothing new or unusual. In fact, "patent license agreements can be written to convey different scopes of promises not to sue, *e.g.,* a promise not to sue under a specific patent." *Id.* The United States Supreme Court has recognized the use of limited patent licenses as essentially a waiver of the patentee's right to sue. *General Talking Pictures Corp. v. Western Elec. Co.,* 304 U.S. 175, 181, 58 S.Ct. 849, 82 L.Ed. 1273 (1938). Subsequent cases have interpreted limited licenses consistent with this view so that a violation of the license restriction gives rise to a patent infringement suit. *See Eli Lilly and Co. v. Genetech, Inc.,* 17 U.S.P.Q.2d 1531, 1534, 1990 WL 305392 (S.D.Ind.1990). "These subsequent cases have also reasoned that violation of the license restriction does not

give rise to an action for breach of contract." *Id.*

*Implied Prohibition*

In the alternative, Plaintiff argues that the license grant contains an implied prohibition when read in conjunction with the full License Agreement and other agreements. Plaintiff claims that there is substantial evidence throughout the Agreements of an implied prohibition against certain "out-of-field" uses. First, Plaintiff argues that the License Agreement is one of three documents which must be read together and within the context of the Georgia lawsuit, which, Plaintiff claims, resulted in a finding of infringement against Rossville. Plaintiff asserts that the structure of the Agreements represents an "acknowledgment that [Plaintiff's] patents dominated and were infringed by the dyeing process described in Rossville's patents." (Pl.'s Br. Opp'n Def.'s Mot. Summ. J. at 10.) Plaintiff claims that, because infringement was already established, any suit to enforce the terms of the License Agreement would have to be in contract, because a suit for patent infringement would be redundant.

Second, Plaintiff refers to the language in Section 8 of the License Agreement, which allegedly shows that the parties contemplated both "infringement" and "breach."[3] Plaintiff also points to the reference in the License Agreement permitting the parties to achieve their "core business objectives" in the License Agreement. (Def.'s Br. Supp. Mot. Summ. J., Ex. B License Agreement at 2.) Plaintiff argues that its "core business objectives" were the protection of its "DURACOLOR" products and its "unique" position in the carpet market. (Pl.'s Br. Opp'n Def.'s Mot. Summ. J. at 11.) In sum, Plaintiff argues that finding an implied prohibition in the language of the Agreements is entirely consistent with its original intentions and objectives when it entered into the Settlement Agreement with Rossville. Furthermore, Plaintiff asserts that this reading is the only reading that would effectuate the intention of the parties in entering into the Settlement Agreement.

■ A plaintiff must meet a very high standard of proof, however, before a prohibition or negative covenant can be implied. *See B & J Mfg. Co. v. Hennessy Indus., Inc.,* 194 U.S.P.Q. 496, 499 (N.D.Ill.1976). This is especially true when the agreement contains an express integration clause. *Id.* As a general rule,

> covenants may only be implied into an integrated agreement 'when the implied term is not inconsistent with some express term of the contract and where there arises from the language of the contract itself, and the circumstances under which it was entered into, an inference that it is absolutely necessary to introduce the term to effectuate the intention of the parties.'

*Id.* (quoting *S. Williston on Contracts,* § 1295 at 34–36 (1968)).

Plaintiff's evidence does not meet this exacting standard. Although Plaintiff al-

---

**3.** "If any *infringement* or threatened *infringement* of the Licensor's Patent Rights comes to the notice of Licensee, Licensee shall promptly notify Licensor, giving full particulars thereof. In the event of any third party *infringement* of the Licensor's Patent Rights during the license term hereof, Licensor shall have the exclusive right to sue such *infringer* (s) in its own name. In any action brought by Licensor against Licensee to enforce the terms of this License Agreement, Licensor will not seek damages from Licensee, but has the right to seek an injunction against continuation of the alleged *breach* of the License Agreement." (Def.'s Br. Supp. Mot. Summ. J., Ex. B License Agreement ¶ 8 (emphasis added); *see also id.,* Ex. C Settlement Agreement, ¶ 5.)

leges that its evidence supports an inference of a negative covenant, there is ample evidence to the contrary. Moreover, Plaintiff's evidence is inconsistent with the express terms of the Agreements.

First, the express language of the Agreements weighs against any finding of implied covenants. The License Agreement at issue contains an integration clause which states that "this instrument contains the entire agreement between Licensor and Licensee with respect to the subject matter hereof." (Def.'s Br. Supp. Mot. Summ. J., Ex. B License Agreement, ¶ 10.) The Settlement Agreement also explicitly states that "[n]o implied licenses or agreements are created by the license executed by the parties." (*Id.*, Ex. C Settlement Agreement, ¶ 3.)

Second, Plaintiff's assertion that there was a finding of infringement in the Georgia lawsuit is erroneous. The language of the Consent Decree states only that "[e]vidence has been presented to the Court from which the Court or other fact finder *could* reasonably find that ... Rossville has been infringing." (*Id.*, Consent Decree at ¶ 3 (emphasis added).) Moreover, the very next paragraph notes that Rossville explicitly denies any such infringement. (*Id.* at ¶ 4.) Thus, any suit by Plaintiff against Solutia for violation of the License Agreement would have to establish patent infringement. By alleging a breach of contract action, Plaintiff is essentially attempting to avoid this evidentiary burden.

The Consent Decree was given to the court in Georgia to enter at the "parties' request" and with their "consent." (*Id.* at p. 1.) Thus, the court simply executed the parties' agreement when it ordered the Consent Decree to act as a "final judgment of the Court resolving all claims and counterclaims that were asserted or could have been asserted" in the action between Plaintiff and Rossville. (*Id.* at p. 2, ¶ 1.) This order does not imply any finding of infringement by Rossville but does mandate a resolution of the claims and compliance with the Settlement Agreement and License Agreement. Without more, Plaintiff's contentions about interpreting the words "breach" and "core business objectives" also fail to meet the evidentiary standard for finding an implied prohibition.

Lastly, the main title of the bargained-for Settlement Agreement cannot be ignored: "Essential terms of license/*covenant not to sue*." (*Id.*, Settlement Agreement at p. 1) (emphasis added). Under this patent license agreement, Plaintiff granted Rossville the right to produce and sell its yarn for certain "uses" without fear of a lawsuit. Thus, this agreement is no more than a "covenant not to sue," as is plainly stated in the Settlement Agreement. With the express language unambiguous in the Agreements, no implied prohibition or negative covenants can be found. Moreover, any inference would not be "absolutely necessary" to protect Plaintiff's interests. As a limited patent license, the Agreement may always be enforced by bringing a patent infringement action. "[I]t is not as if [Plaintiff] will lose any rights by the court's failure to imply such a negative covenant since [Plaintiff] can, as it has, sue for patent infringement on those items [sold] outside the license grant." *B & J*, 194 U.S.P.Q. at 499.

## CONCLUSION

As Plaintiff has pointed out, the License Agreement, Consent Decree, and Settlement Agreement were the result of four years of litigation between Plaintiff and Rossville, creating thousands of pages of documents and briefs and costing each party valuable time and money. Each party was an established business, well-represented, and undoubtedly spent nu-

merous days and hours negotiating the wording of the Agreements. In the face of the express language of the Agreements, the court finds that the Agreements granted Rossville a limited patent license which does not contain any "prohibition," express or implied. Any breach of the license must be enforced through a patent infringement action. As a result, the court will grant Defendant's motion for judgment as a matter of law as to Plaintiff's breach of contract claim. Furthermore, because Plaintiff's remaining claims depend on the viability of the breach of contract claim, the court will dismiss these claims as moot.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER and JUDGMENT

For the reasons set forth in the Memorandum Opinion filed contemporaneously herewith,

IT IS ORDERED that Plaintiff's motion for a preliminary injunction [Doc. # 34] is **DENIED**.

IT IS FURTHER ORDERED that Defendant's motion for judgment [Doc. # 102] as a matter of law as to Plaintiff's breach of contract claim is **GRANTED**, and said claim is **DISMISSED** with prejudice.

IT IS FURTHER ORDERED that Plaintiff's remaining claims are **DISMISSED** as moot.