**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 4, 2024**

# In the Court of Appeals of Georgia

A23A1546. CLS ENTERTAINMENT, INC. v. KENKAM, LLC.

GOBEIL, Judge.

Following years of litigation between these parties, the instant appeal arises from three orders issued by the Superior Court of Fulton County in a dispossessory proceeding between CLS Entertainment, Inc. ("CLS") and Kenkam, LLC ("Kenkam"). On appeal, CLS contends that the superior court erred in (1) ordering CLS to pay rent, contradicting a settlement agreement between the parties; entering a monetary judgment in Kenkam's favor; and (3) issuing a writ of possession to Kenkam. For the reasons that follow, we reverse.

*Standard of Review*

"The construction of a contract is a question of law for the court, and we apply a de novo standard of review on appeal." *Immel v. Immel*, 298 Ga. App. 424, 424-425 (680 SE2d 505) (2009) (citation and punctuation omitted).

*Background*

The voluminous record in this case reveals that the relationship between the parties began on February 7, 2017, when they entered into a Commercial Building Lease for "approximately 0.25 acres of land [and a building] . . . located [at] 201 Courtland Street, Atlanta, Georgia 30303 . . . ." Kenkam was the landlord in this agreement, and CLS the tenant. Section 1.3 of the Lease provided CLS the option to purchase the property pursuant to proper notice. The term of the Lease extended for two years, commencing on March 1, 2017, and ending on February 28, 2019, unless CLS chose to provide notice of renewal pursuant to the Lease.

Claiming CLS failed to properly exercise its renewal option, on March 12, 2019, Kenkam notified CLS of its holdover tenant status by sending a Notice of Termination of Lease and Demand for Immediate Possession. CLS continued to occupy the property, and on March 26, 2019, Kenkam initiated a dispossessory action in Fulton County State Court. CLS answered the lawsuit and asserted defenses and

counterclaims. On July 2, 2019, the state court ordered CLS to pay rent during the pendency of the action, and transferred the case to the Superior Court of Fulton County (due to an equitable counter-claim).

Litigation ensued. Relevant to the issues on appeal, CLS claimed that it wanted to exercise its option to purchase the property or renew the Lease. Kenkam sought immediate possession of the premises pursuant to OCGA § 44-7-54 (b). The superior court issued an order on October 22, 2019, finding that CLS had not properly notified Kenkam of its desire to purchase the property or renew the Lease, finding CLS to be a holdover tenant, and ordering CLS to pay the holdover rate of $16,500 per month (into the court registry) while the action was pending.

*The Settlement Agreement*

On February 12, 2020, the parties attended a Judicially Hosted Settlement Conference, at which they reached a settlement agreement (the "Agreement"). The transcript from the settlement conference showed that the Agreement was to be structured in two parts, together forming the entirety of the settlement agreement between the parties. First, there was to be a written agreement with key settlement terms "memorialized into a written agreement that should remain private and

confidential between the parties; subject to being drafted by counsel for [Kenkam] and counsel for [CLS]" ("Confidential Agreement"). Second, there was to be a consent order, containing certain terms of the Agreement, filed in the superior court.

First turning to the transcript, it identifies certain key terms of the Agreement as follows. The parties agreed that CLS would purchase the property from Kenkam at a closing scheduled for May 13, 2020, at a specified purchase price that would be paid by CLS. In exchange, Kenkam agreed to deliver clear and marketable title to the property; if the transaction could not close due to Kenkam's inability to provide such title, the closing would be extended at no penalty to CLS, and all terms of the Consent Order would remain in full force and effect.

Further, the transcript reflects that the parties agreed that rent funds CLS had paid into the court registry would be released to Kenkam, and "CLS shall have no further obligation to make rental payments regarding the leased property, including the February rent." And, Kenkam would be entitled to a writ of possession on May 14, 2020 – but only if CLS failed to bring the necessary funds to the closing on May 13 and provided that Kenkam could close under the terms established by the parties. If failure to close was the responsibility of Kenkam, then it would not be entitled to a

writ of possession. Further, the parties mutually agreed to dismiss all pending monetary claims against each other, and the only pending claim in the litigation would be possession of the property. The case would be considered stayed only until May 14, 2020, at which point the case would either be dismissed with prejudice or set for trial.

The superior court subsequently entered the Consent Order, the second part of the proposed Agreement, which included the following pertinent language:

> [CLS] shall be excused from all rental payments for the leased premises at issue in this litigation including the payment due for February, 2020. [CLS] shall have no further obligation to make rental payments to [Kenkam] regarding the leased premises *under any circumstance*. Consequently, [CLS] shall not be required to deposit any further sums into the Registry of the State Court pending a final order in this action, and [Kenkam] shall no longer be entitled to a writ of possession due to failure to pay rent.(Emphasis supplied).

The Consent Order acknowledges that the parties "have reached a private and confidential settlement of this litigation." However, the Confidential Agreement does not appear in the record before us and it is unclear exactly what may have been executed confidentially between the parties.

*The Failure to Close the Real Estate Transaction*

The parties failed to close as scheduled on May 13, 2020. Kenkam filed a motion to enforce the Agreement and sought an immediate writ of possession per the

Agreement, asserting that CLS was responsible for the failure to close. CLS claimed that the failure to close was Kenkam's fault, and filed a cross motion to enforce the Agreement, seeking to compel Kenkam to close on the sale with a new closing date of September 14, 2020 (based on the Georgia Supreme Court's Judicial Emergency Orders concerning the COVID-19 pandemic).

On September 8, 2020, the superior court issued an order ("the 2020 order") determining that CLS was not at fault for the failure to close in May. First, the court noted that the COVID-19 Judicial Emergency Orders extended the deadline to close on the transaction to September 14, 2020. Accordingly, so long as CLS made the funds available by that deadline, it was not in breach of the Agreement. Second, the court found that Kenkam had failed to satisfy certain preconditions to the sale.[1] Accordingly, the superior court denied Kenkam's motion to enforce the Agreement and its request for an immediate writ of possession, and granted CLS's motion to

---

[1] Most importantly, there was an issue that Kenkam's ownership of the property involved the State of Georgia. As described in a May 3, 2023 order, Kenkam owns the building at issue, but leases the land on which the building sits from the State, and at the time of the 2020 order, the parties believed that Kenkam and CLS both needed State approval before closing on the sale, which they had failed to secure. Eventually, "during the course of the litigation, the State informed the parties that the State's approval of the sale was not necessary." However, the mistaken belief that the parties required State approval delayed the closing for at least another year.

6

enforce the Agreement, ordering the parties to continue to work towards closing on the transaction. However, the court found that "equity and fairness will not allow CLS to continue to remain in possession of the premises without paying rent." Thus, the court ordered CLS to pay $11,000 (the non-holdover rent rate from the original lease) per month (back-dated to June 2020) to Kenkam, with a pro-rated rent payment due at the September closing.

The parties again failed to close on the transaction. Kenkam filed an emergency motion seeking rent payments, pursuant to the 2020 order, until the case was resolved. On July 28, 2021, the superior court granted this motion ("the 2021 order"). The court found that the ensuing delay was not primarily the fault of either party; indeed, the court found that both parties were partially responsible, as well as outside forces such as the ongoing pandemic and the State's involvement. The court reiterated its finding that equity and fairness, as well as common law, required CLS to pay rent while it continued to occupy the property and maintain a business in the leased building. And , the court held that the Agreement did not supersede this obligation. More specifically, it found that the intent and purpose of the Agreement, looking at it as a whole, was to excuse CLS from payment of rent only through May

2020 (the date on which CLS originally was supposed to take ownership of the property). Thus, the court ordered CLS to pay $11,000 per month until the transaction was complete. Finally, the court noted that CLS's failure to comply with the 2021 order would entitle Kenkam to a writ of possession instanter.

*More Delays*

The transaction failed to close, and the parties continued to dispute who was at fault and what obligations were owed in the interim. In October 2021, CLS made a late rent payment, and Kenkam sought an immediate writ of possession. On March 30, 2022, the superior court issued an order requiring CLS to make certain rent payments it had disputed (for February 2021-July 2021), denying Kenkam's application for a writ of possession because CLS was entitled to a 10-day grace period on its late rent under the Lease, and finding that Kenkam should not be held in contempt for its failure to obtain State approval for the transaction, as it was making good-faith efforts to close on the property.

On October 5, 2022, the superior court entered an order requiring Kenkam to communicate with State officials about its approval or denial of the real estate sale. The court ordered CLS to pay Kenkam $132,000 in back-due rent, holding another

8

application for a writ of possession in abeyance until October 19, 2022. The court also ordered mediation in an attempt to resolve lingering issues between the parties.

*Final Order*

On February 3, 2023, Kenkam filed a motion for immediate writ of possession, asserting that CLS had not paid the rent ordered in October 2022 or any rent due thereafter. The final order in this case came on May 3, 2023 ("the 2023 order"). The superior court found that "neither party has fully complied with the [c]ourt's previous orders," noting that Kenkam had failed to execute the sale of the property to CLS, but CLS had "consistently thwarted" the court's orders by failing to pay rent. The court then found that Kenkam was entitled to immediate possession of the property based on CLS's failure to pay rent and OCGA § 44-7-50 (a). The court also granted Kenkam a monetary award of $209,000 in back-due rent (as a means to enforce its previous orders). This appeal followed.

*Appeal*

1. CLS contends that the superior court erred in the 2020 and 2021 orders when it required CLS to pay rent on the property in contradiction of the Agreement between the parties. More specifically, CLS argues that the superior court had no authority to

ignore the plain and unambiguous terms of the Agreement contained in the Consent Order that eliminated its obligation to pay rent "under any circumstance." According to CLS, the superior court's interpretation of the Agreement was in error, as a court is permitted to apply rules of contract construction only when a contract is ambiguous, which this one was not.

Kenkam counters that, in the Agreement, it agreed only to abate the rent owed by CLS for the months of February through May 2020, up until the scheduled closing on May 13, 2020. Kenkam argues that CLS's interpretation of one provision of the Agreement ignores the intent, context, and remaining provisions of the Agreement.

The resolution of this case centers on the parties' Agreement, particularly the Consent Order. "A consent judgment is one entered into by stipulation of the parties with the intention of resolving a dispute, and generally is brought to the court by the parties so that it may be entered by the court, thereby compromising and settling an action." *City of Centerville v. City of Warner Robins*, 270 Ga. 183, 184 (1) (508 SE2d 161) (1998). Thus,

> a consent order is essentially a binding agreement of the parties that is sanctioned by a court, and it is subject to the rules governing the interpretation and enforcement of contracts. Accordingly, a consent

order can be construed according to the general rules of contract construction[.]

Id. at 186 (3).

"In Georgia, settlement agreements are highly favored under the law and will be upheld whenever possible as a means of resolving uncertainties and preventing lawsuits." *Leary v. Julian*, 225 Ga. App. 472, 474 (1) (484 SE2d 75) (1997) (citation and punctuation omitted).

> In Georgia, the construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. The existence or nonexistence of an ambiguity is a question of law for the court.

*White v. Kaminsky*, 271 Ga. App. 719, 721 (610 SE2d 542) (2004) (citation and punctuation omitted). "Whenever the language of a contract is plain, unambiguous, and capable of only one reasonable interpretation, no construction is required or even permissible, and the contractual language used by the parties must be afforded its literal meaning." *Urban Svcs. Group v. Royal Group*, 295 Ga. App. 350, 352 (1) (b) (671

11

SE2d 838) (2008) (citation and punctuation omitted). Where the language of a contract is plain and unambiguous, courts are "not at liberty to ignore the specific terms of the parties' written agreement and rewrite or revise a contract under the guise of construing it." *Bearoff v. Craton*, 350 Ga. App. 826, 834 (1) (830 SE2d 362) (2019) (citation and punctuation omitted). "Language is ambiguous when it is of uncertain meaning and may be fairly understood in more ways than one." *Etowah Valley Sporting Clay Park, LLC v. Dawson County*, 294 Ga. App. 586, 589 (1) (a) (669 SE2d 436) (2008) (citation and punctuation omitted).

But here, where the entire Agreement (at least as expected to exist from the transcript) is not in the record, this Court's ability to review it is limited. As mentioned and as acknowledged by both the transcript and the Consent Order, the Agreement was to be memorialized in two parts: one comprising the written Confidential Agreement and the other the Consent Order. The Agreement for review before this Court, however, includes only the part released by the parties – the Consent Order. (Though we have the settlement agreement hearing transcript, which sets forth key terms that the parties – at that time – apparently intended to be covered by the Confidential Agreement and Consent Order, respectively.) The Consent Order

12

specifically states that CLS "shall have *no further obligation* to make rental payments to [Kenkam] . . . *under any circumstance.*" (Emphasis supplied). We find that this language on its face plainly, clearly, and unambiguously conveys the cessation of the obligation for further rental payments under the Agreement. But going further, dictionary definitions – which we can consider in discerning the ordinary and popular sense of word usage – reinforce this interpretation. See *Caswell v. Anderson*, 241 Ga. App. 703, 705 (527 SE2d 582) (2000). Turning first to "any," in isolation and as an adverb, it is defined as "one, some, or all indiscriminately of whatever quantity: . . . ALL — used to indicate a maximum or whole."[2] But, we do not look at words of an agreement in isolation, but in context of the language agreed upon by the parties. See *Brazeal v. NewPoint Media Grp., LLC*, 331 Ga. App. 49, 56 (769 SE2d 763) (2015). Here, the linguistic context of "no further obligation . . . under any circumstance" is virtually identical to the idiom "not under any circumstance/under no circumstance," which Merriam-Webster Dictionary defines as "no matter what happens."[3] Thus, we

---

[2]    M e r r i a m   W e b s t e r   D i c t i o n a r y , https://www.merriam-webster.com/dictionary/any (visited February 26, 2024).

[3]    M e r r i a m   W e b s t e r   D i c t i o n a r y , https://www.merriam-webster.com/dictionary/notunderanycircumstance/undernocircumstance (visited February 26, 2024)

conclude that the ordinary meaning of "no further obligation . . . under any circumstance" means what it says: in the context of the Consent Order, CLS's obligation to pay rent was eliminated in all situations.

Given this clear, unambiguous language, we are constrained to find that the superior court erred in performing contract construction to impose a rent obligation after the parties entered into the Agreement, despite the superior court's understandable desire to employ principles of fairness and equity. We acknowledge that the parties entered into the Agreement with the impending sale of the property in mind. We also acknowledge that our interpretation may frustrate the parties' intention behind entering the Agreement. Nevertheless, the Consent Order is the only part of the Agreement before us. And, the parties agreed in the Consent Order that CLS had "no further obligation" to pay rent "under any circumstance" – a phrase whose ordinary meaning we find to be clear and unambiguous. They also agreed to a Consent Order without contingencies for all potential delays in closing. Consequently, we are not permitted to engage rules of construction nor are we "at liberty to ignore the specific terms of the parties' written agreement and rewrite or revise [it] under the guise of construing it." *Bearoff*, 350 Ga. App. at 834 (1). Hence, we hold that the

superior court erred by ordering CLS to pay rent in the 2020 and 2021 orders, contrary to the terms of the Agreement.

CLS also asserts that the superior court could not order it to pay rent out of "equity and fairness" because that constituted an impermissible reformation of the Agreement. We agree. We note that Kenkam did not raise a claim of equitable reformation. And as stated above, because the Agreement was not ambiguous, the superior court was not at liberty to ignore the specific terms of the Agreement. *Bearoff*, 350 Ga. App. at 834 (1). Moreover, equity was not a valid basis for the trial court to unilaterally modify the Agreement. See *Eden v. Eden*, 344 Ga. App. 864, 868 (1) (812 SE2d 317) (2018) (trial court erroneously imposed a unilateral modification of a settlement agreement that it deemed equitable and fair). Consequently, the superior court erred in ordering CLS to pay rent after the parties entered into the Agreement.

2. CLS contends that the superior court erred in the 2023 order by ordering a monetary judgment in the amount of $209,000 in back-due rent to be paid to Kenkam. The superior court specifically awarded the money judgment as a means "to enforce its previous orders requiring [CLS] to pay the amount due in rental payments." Given

our decision in Division 1 of this opinion, pursuant to the clear and unambiguous terms of the Agreement, CLS was not required to pay rent and the superior court erred in ordering it to do so. Accordingly, the award of $209,000 representing the amount of back rent owed to Kenkam must be reversed.

3. Finally, CLS maintains that the superior court erred in issuing a writ of possession to Kenkam.[4] In the 2023 order, the superior court found that Kenkam was entitled to a writ of possession under OCGA § 44-7-54 (a) due to CLS's failure to pay rent.[5] Again, as stated above, the superior court erred in finding CLS had an obligation

---

[4] In its brief, CLS argues that the superior court erred in issuing a writ of possession to Kenkam because it held possession of the property under a contract of purchase, and not as a tenant, and only tenants can be dispossessed from a property. However, because we find that the superior court erred in issuing the writ based on failure to pay rent, we need not address CLS's specific argument.

[5] OCGA § 44-7-50 (a) provides that
In all cases when a tenant holds possession of lands or tenements over and beyond the term for which they were rented or leased to such tenant or fails to pay the rent when it becomes due and in all cases when lands or tenements are held and occupied by any tenant at will or sufferance, whether under contract of rent or not, when the owner of such lands or tenements desires possession of such lands or tenements, such owner may, individually or by an agent, attorney in fact, or attorney at law, demand the possession of the property so rented, leased, held, or occupied. If the tenant refuses or fails to deliver possession when so demanded, the owner or the agent, attorney at law, or attorney in fact of such owner may immediately go before the judge of the superior court,

16

to pay rent because the unambiguous language of the Agreement eliminated that obligation "under any circumstance." Because the superior court erred in ordering CLS to pay back rent, CLS's failure to pay the erroneously ordered rent cannot form the basis for Kenkam's entitlement to a writ of possession. Consequently, we reverse the superior court's writ of possession stemming from CLS's failure to pay rent.[6]

*Conclusion*

We find, based on the terms of the Agreement, the superior court erred in finding CLS was obliged to pay rent after the parties entered into the Agreement in the 2020 and 2021 orders. Accordingly, we reverse the superior court's 2023 order requiring CLS to pay a monetary judgment of $209,000 in back rent and issuing a writ of possession to Kenkam.[7]

*Judgment reversed. Doyle, P. J., and Senior Judge C. Andrew Fuller concur.*

---

the judge of the state court, or the clerk or deputy clerk of either court, or the judge or the clerk or deputy clerk of any other court with jurisdiction over the subject matter, or a magistrate in the district where the land lies and make an affidavit under oath to the facts.

[6] We express no opinion as to other potential remedies Kenkam might pursue.

[7] Kenkam's pending motions to supplement the record, to dismiss this action, and for supersedeas are DENIED AS MOOT.

17